THE VILLAGE OF DOWNERS GROVE, Appellee, *vs.* JOHN FINDLAY *et al.* Appellants.

*Opinion filed December 15, 1908.*

1. SPECIAL ASSESSMENTS—*when publication of ordinance within a reasonable time after its passage is sufficient.* Where a special assessment ordinance for an improvement estimated to cost less than $100,000 provides that it shall "take effect from and after its passage, approval and publication" but fixes no time for such publication, it is sufficient if the ordinance is published within such a reasonable time after its passage and approval that no inference against the ordinance or the intention that it should take effect upon publication can arise out of the lapse of time.

2. SAME—*when distribution of cost between inside lots and corner lots is unjust.* If the weight of the evidence upon the question of the distribution of the cost of a local improvement between inside lots and corner lots shows that the relative proportion of the benefits to such lots will be the same percentage of their present value, which value is fixed by the majority of the witnesses at the ratio of 7 to 10, the assessment as between the inside lots and corner lots should be spread at that ratio, and a mere reduction of ten per cent on corner lots, leaving their assessment $378 as against $180.70 for inside lots, is unjust and unauthorized.

APPEAL from the County Court of DuPage county; the Hon. W. L. POND, Judge, presiding.

JOSEPH H. FITCH, for appellants.

G. H. BUNGE, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

John Findlay and forty other owners of lots in the village of Downers Grove appealed from the judgment of the county court of DuPage county confirming a special assessment against their property, levied by said village to defray the expense of curbing with concrete curbs and gutters and paving with brick the roadways of a district including nine streets.

The objections which were interposed to the assessment and overruled by the court were what are termed in the Local Improvement act legal objections, and the first one was, that the ordinance for the improvement never took effect. The ordinance was passed on April 7, 1908, and approved the same day, and section 9 was as follows: "This ordinance shall be in force and take effect from and after its passage, approval and publication." It was not published until June 19, 1908, more than two months after it was passed, when it was published in a newspaper in the village. The estimated cost of the improvement was a little less than $100,000, and the ordinance did not come within the provision of section 11 of the Local Improvement act, requiring publication in the proceedings of the board of trustees before its passage. It did not impose any fine, penalty, imprisonment or forfeiture or make any appropriation, and therefore did not come under the provision of section 3, article 5, of the City and Village act, requiring publication within one month after passage, but it was within the provision of that section that all other ordinances shall take effect from and after their passage, unless otherwise provided therein. It was otherwise provided and the ordinance was not to take effect until the publication, but there was no limitation, either by statute or ordinance, as to the time when the publication should take place. The publication made was within such a reasonable time that no inference against the ordinance or the intention that it

237—24

should take effect upon publication could arise out of the lapse of time. The court did not err in overruling that objection.

The other objection relied upon by the property owners and concerning which a great number of witnesses testified both for the village and the objectors was made under section 47 of the Local Improvement act, which requires the court, upon objection, to inquire whether or not the assessment as made and returned is an equitable and just distribution of the cost of the improvement among the parcels of property assessed. The assessment against property aggregated $96,848.37 and the public benefits were fixed at $152.25, showing scrupulous and conscientious care to ascertain the exact amount of benefit which would accrue to the public. Upon the trial it was proved that Downers Grove is a suburban village of about three thousand inhabitants, twenty-one miles from Chicago, with cheap transportation, and the district assessed is a residence section about one-half built up with frame dwellings occupied mainly by persons of moderate means employed in Chicago. The improvement is of a very expensive nature as compared with the character of the property and there was much evidence on that subject, but the question raised and argued on this appeal is whether the distribution between the inside lots and corner lots was equitable and just. The assessment on inside lots was $180.70 each and on corner lots $419 each. The court, after hearing the evidence, reduced the assessment on the corner lots ten per cent and confirmed it as so reduced, but our search of the record for any evidence sustaining the conclusion of the court that the assessment as reduced was a just and equitable distribution of the cost of the improvement as between the corner lots and inside lots has been entirely fruitless. It is true that a few of the witnesses gave testimony that corner lots would be benefited $419, or even more, and that lots worth $500 would be doubled in value. Perhaps the judgment of the court

was based on testimony of that character. But that was not the question under consideration. The question raised by the objection was, not how much could be charged against corner lots for benefits, but what would be just and equitable as between the corner lots and inside lots. The testimony of the same witnesses would justify an assessment against inside lots of nearly double the amount of the assessment which was left undisturbed as to them. Most of the witnesses estimated the present value of inside lots at $350 and corner lots at $500, which would be at the ratio of seven to ten. Some witnesses for the village testified to a ratio of seven to nine, and said that inside lots selling at $7 a front foot would be worth $14 with the improvement, and corner lots at $10 a foot would afterward sell for $20. The lots had a frontage of fifty feet on the street and a depth of one hundred and thirty-two feet. The testimony of every witness, when analyzed with the figures given, was to the effect that the relative proportion of benefits as between corner lots and inside lots would be the same percentage of present value. The great majority of the witnesses fixed the relative values at seven to ten, and all estimated the benefits in the same relative proportion. The evidence affords no basis for charging corner lots with benefits to the amount of about $378 as against $180.70 for inside lots. The only conclusion to be drawn from the evidence as to what would be a just and equitable distribution as between the two classes of lots is, that if inside lots are assessed $180.70, corner lots should be assessed $258. In sustaining the objection the court should have reduced the assessment on the corner lots to that amount, and the court erred in reducing the assessment on corner lots only ten per cent.

The judgment of the county court is reversed and the cause is remanded to that court, with directions to reduce the assessment on corner lots to the sum of $258 each.

*Reversed and remanded, with directions.*