(No. 34145.—

THE CITY OF LEWISTOWN, Appellee, *vs.* LEWIS F. BRADEN *et al.,* Appellants.

*Opinion filed November 26, 1956.*

ZEMPEL & KOST, of Lewistown, for appellants.

LACHLAN CRISSEY, of Lewistown, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The city of Lewistown initiated a proceeding in the county court of Fulton County for the levy of a special assessment to pay the cost of repaving certain streets. Legal objections were overruled and a jury determined that the assessments against the properties of the objectors did not exceed the benefits and that their properties were not assessed more than their proportionate share of the cost of the improvement. These defendants, who were objectors below, appeal directly from the judgment of confirmation. Ill. Rev. Stat. 1955, chap. 24, par. 84—95.

Although the defendants do not challenge the verdict of the jury as to benefits and proportionate share, they raise numerous technical objections to the proceedings of the board of local improvements and the city council, and the steps taken by the commissioner appointed to spread the assessment.

Defendants' first objection attacks the resolution of the board of local improvements on the ground that the improvement is to be constructed with the aid of another governmental agency, and that section 7 of the Local Improvement Act is therefore applicable. That section provides that where a local improvement "is to be constructed with the assistance of the Works Progress Administration or any other agency of the Federal Government, or other gov-

ernmental agency, the resolution of the board of local improvements shall set forth that fact and the estimate of cost shall set forth and indicate, in dollars and cents, the estimated amount of assistance to be so provided." (Ill. Rev. Stat. 1955, chap. 24, par. 84—7.) The ordinance adopted by the city council provided that the cost of the improvement ($113,300) should be met "by applying thereto seventy per cent (70%) thereof from the allotment to the municipality of its share of the Motor Fuel Tax collected by the State of Illinois to be applied against the public benefits assessed against the City * * *" and the balance, 30% of the estimated cost, by special assessment against the property benefited. The total cost of the improvement is thus to be borne by special assessment, without the assistance of any other governmental agency. Defendants' objection arises from a misunderstanding of the nature of a public benefit assessment. When a judgment assessing benefits against the public is entered against a municipality in a special assessment case, it becomes an obligation of the municipality. To satisfy that obligation the municipality makes annual appropriations from available funds to pay the annual installments levied against it. Cf. *People ex rel. Toman* v. *Crane,* 372 Ill. 228, 230-233.

The next objection arises from the same misunderstanding. It is that the ordinance constituted an appropriation of money, and is therefore invalid because it was not published in accordance with section 10—3 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1955, chap. 24, par. 10—3.) The ordinance was not published, but the difficulty with defendants' contention is that the ordinance does not make any appropriation. It recites that the State has approved the application by the city of motor fuel tax receipts against the public benefit to be assessed to the extent of 70% of the total cost of the project. The determination of the amount to be assessed against the public rested with the court. This court has held in a

case where there was a public benefit assessment levied, that an ordinance for a special assessment need not be published under this provision of the statute requiring the publication of appropriation ordinances. *Village of Downers Grove* v. *Findlay, 237* Ill. 368, 369.

Defendants also urge that the ordinance is invalid because the "Aye" and "Nay" votes were not properly recorded in the journal of the city council, as required by section 9—47 of the Revised Cities and Villages Act. The minutes of the meeting at which the ordinance was adopted show that all five aldermen were present. They continue: "Alderman Shaw made a motion, seconded by Alderman Weirauch that the Ordinance be finally passed and adopted as introduced and read. Upon roll call all voted 'Aye.' Motion carried." The city clerk testified that the five aldermen present at the meeting, whom he named, voted "Aye" and that no "Nay" votes were cast. In *People ex rel. Anderson* v. *Chicago and North Western Railway Co.* 396 Ill. 466, relied upon by defendants, the ordinance in controversy was defective because the record did not show that there had been a roll call vote. As the court pointed out, the record in that case was consistent with "a *viva voce* vote which the statute does not permit, and so does not show a roll call as is required." Here the record shows that there was a roll call.

It is argued that the commissioner appointed to make the assessment did not take a proper oath of office. He took an oath to "make a true and just assessment of the cost of the local improvement * * *." The record shows that the commissioner made the affidavit of compliance required by section 41 of the Local Improvement Act. (Ill. Rev. Stat. 1955, chap. 24, par. 84—41.) Defendants insist that he should have subscribed to the form of oath required of municipal officers generally. (Ill. Rev. Stat. 1955, chap. 24, par. 9—89.) The contention is without merit. Apparently no oath was required, (see Ill. Rev. Stat. 1955, chap.

24, par. 84—38; cf. par. 84—14,) but in any case the commissioner is not an "officer," within the contemplation of section 9—89 of the Revised Cities and Villages Act. He is but "an agent or employee for a single and specific purpose, whose functions are at an end upon the completion of his work." *City of Lawrenceville* v. *Hennessey*, 244 Ill. 464, 466-467.

Defendants contend that the commissioner erred in not personally estimating the public benefit and apportioning the aggregate cost between the city and the property to be benefited, as directed by section 39 of the Local Improvement Act. (Ill. Rev. Stat. 1955, chap. 24, par. 84—39.) The distribution of the cost of the improvement between the public and the private property assessed is open for review in the trial court, but the determination of the trial court is conclusive and not subject to review. Ill. Rev. Stat. 1955, chap. 24, par. 84—47; *City of Belleville* v. *Miller*, 257 Ill. 244, 247; cf. *City of Ottawa* v. *Colwell*, 260 Ill. 548.

The commissioner testified that he assessed the properties at the rate of $4 per front foot on streets which were 36 feet wide and $3.35 per front foot on streets 30 feet wide. Properties located on corners were assessed at the full rate on the front street and at one half the rate on the side street. In addition, there was a different rate for properties on streets on the north and west sides of the high school where a different width of paving was provided. The commissioner testified that he made no effort to assess the benefits upon the basis of the uses to which the properties were devoted or their assessed values. A vacant lot was assessed upon the same basis as a lot improved with a house. But he also testified that all of the vacant lots were suitable for building purposes.

Defendants insist that the assessment is invalid because it was made solely on a frontage basis, without regard to benefits. Although it has often been said that a special

assessment made solely on a front-foot basis, without regard to benefits, would be invalid, the commissioner is not precluded from taking front footage into consideration as an element in fixing the amount of the assessment. (*City of Monticello* v. *LeCrone*, 414 Ill. 550; *City of Belleville* v. *Miller*, 257 Ill. 244; *City of Nokomis* v. *Zepp*, 246 Ill. 159.) In *City of Nokomis* v. *Zepp*, 246 Ill. 159, this court upheld a front-footage assessment because the commissioner had determined that the benefit to each lot was equal to the exact cost of the improvement abutting the lot. There the commissioner calculated the exact cost of the paving per square yard and then found the exact cost per front foot on each street. In this case the figures of $3.35 per front foot for streets 30 feet wide and $4 per front foot for streets 36 feet wide show a similar differential based upon construction costs. The commissioner made no variation in the assessments between various properties because he believed that there was no significant difference in the benefits to be received. He did deviate, however, from a strict front-foot basis in the case of lots abutting two streets, and this variation recognizes the principle, relied upon by defendants, that the individual assessments should be proportionate to the benefits received.

Defendants' final contention is that the commissioner was not a "competent" person to make the assessment. Fraud or prejudice is not claimed. It appears that the commissioner was secretary-treasurer of a building and loan association which owned mortgages on seven of the 81 properties assessed. The assessment was fair and impartial, and the interest was too remote to require the commissioner's disqualification.

The judgment of the county court of Fulton County is affirmed.

*Judgment affirmed.*