In re VILLAGE OF BRIDGEVIEW, COOK COUNTY, ILLINOIS, SPECIAL ASSESSMENT (The Village of Bridgeview, Petitioner-Appellant, v. F. Strickland *et al.*, Objectors-Appellees).

First District (1st Division)   No. 84—1018

Opinion filed December 30, 1985.

---

*This opinion was adopted as the opinion of the court prior to the retirement of Mr. Justice Mejda.

Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago (Peter D. Coblentz and Steven A. Stender, of counsel), for appellant.

Robert E. Knoppe, of Western Springs, and Vincent Cainkar, of Louis F. Cainkar, Ltd., of Chicago, for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

The present appeal arises out of an action instituted by the village of Bridgeview for authority to construct a local improvement by special assessment. Following a jury trial, a verdict was returned reducing the assessments of 50 lots by approximately 50%. The village appeals from the judgment entered on the jury's verdict. For the following reasons, we affirm.

The record reveals that on February 10, 1983, the village filed a petition in the circuit court seeking authority to construct a local improvement by special assessment in the Bridgeview Gardens Subdivi-

sion. The improvement was to consist of street improvements and storm sewers. Thereafter, in June 1983, the village filed its assessment roll and report which identified the property to be assessed and the amount of each assessment. Fifty assessees, hereinafter called objectors, filed legal and benefit objections to the assessment as they are authorized to do under the Illinois Municipal Code. (Ill. Rev. Stat. 1983, ch. 24, par. 9—2—55.) The trial court overruled the legal objections, but scheduled a jury trial on the objectors' contention that they were not benefitted by the improvement to the amount they were assessed.

Prior to trial, the village presented a motion *in limine* seeking to prevent the objectors from offering evidence or testimony pertaining to: (1) the employment or economic status of any of the objectors; and (2) the effect on value the proposed improvement would have, unless the witness had been properly qualified as an expert. During oral argument on the motion *in limine*, counsel for the objectors stated they planned to offer general demographics and statistics pertaining to the income of residents in the area. Counsel for the objectors informed the court he would not "have people come in and say 'Joe Blow, the objector, he makes five thousand dollars.'" After hearing arguments, the court granted the motion *in limine* on the effect on value the proposed improvement would have, unless the witness was an expert, but stated it would wait to see "how you're going to go on the economics." Shortly thereafter, the village presented a draft order which was modified and signed by the court. Although the original document then signed by the court has purportedly disappeared, the court on June 29, 1984, entered an order *nunc pro tunc* as of November 15, 1983, so as to accurately reflect its intent in ruling on the village's motion *in limine*. In that order, the court expressed its intention to prohibit testimony as to the economic status of any individual objector, but to allow such economic evidence concerning the geographic area as a whole.

At trial, three witnesses testified on behalf of the objectors. The first was Linda Annen, a local real estate broker and an objector, who had performed at least 20 market analyses. Annen stated that because of the physical nature of the homes in Bridgeview Gardens, the improvements would have no appreciable effect on their market value.

The second witness called by the objectors was James Kirk, a 15-year resident of Bridgeview Gardens and an assessee. Kirk testified that the area was subject to pollution from local industry and the pollution was present when he bought his home. He also stated that the question concerning the construction of improvements was "over-

whelmingly defeated" in a village-wide referendum.

The last witness called by the objectors was Thomas Holcer, a real estate appraiser qualified and accepted as an expert witness. Holcer presented a methodology of real estate valuation and forecasting of the fluctuations of real estate values as a function of mortgage interest rates, buyer's income, and the demographic characteristics of the community. Holcer's opinion, based upon prevailing mortgage rates, United States census data, on site review of the area and comparable real estate sales, was that the proposed improvement would increase the market value of real estate in the area by $1,000 to $1,500.

After the objectors rested their case, the village moved to strike Holcer's testimony on the ground of relevance. The motion was denied.

Three witnesses testified for the village. Frank Bilich, superintendent of the department of public works of the village of Bridgeview, testified that the streets and ditches that existed throughout Bridgeview Gardens did not meet the village's current standards. The streets were originally constructed of stone and chip, and were patched on an as-needed basis. The irregularities in the streets made them difficult to plow and sweep. In the winter, ice formed on them, making travel dangerous.

The second witness called by the village was Russell Prekwas, a civil and electrical engineer who designed the plans for the Bridgeview Gardens improvement. Prekwas explained that the poor condition of the roadway surfaces throughout the subdivision was caused in part by poor drainage. He stated that the proposed improvements would remove storm water from Bridgeview Gardens more efficiently than the current system of drainage ditches.

The third witness called by the village was Thomas Collins, an expert real estate appraiser. Collins testified that the value of a typical house in Bridgeview Gardens was $50,000 and that the improvements would increase its fair market value from $4,000 to 10% of its value. He reached this opinion by visiting Bridgeview Gardens 12 to 20 times; by comparing the sales prices of lots with full public improvements to the prices of lots without public improvements; and by drawing upon his 32 years of experience as a real estate appraiser. Collins further testified that high interest rates impact the value of real estate.

After hearing all of the evidence and viewing the assessment site, the jury reduced the assessments to the objectors' property by an average of $2,000 per lot. The court entered judgment on the jury's verdict. The village filed a post-trial motion for judgment notwithstand-

ing the verdict or, alternatively, for a new trial. The motion was denied.

I

■ On appeal, the village first argues that the testimony of the objectors' expert, Thomas Holcer, should have been stricken because it was based on improper elements. In particular, the village contends that Holcer, in arriving at his opinion of valuation, improperly considered the role that median household income in a particular area plays in the determination of the value of residential real estate in that area. In support of its contention that Holcer's testimony must be stricken, the village cites *City of Chicago v. Van Schaack Brothers Chemical Works, Inc.* (1928), 330 Ill. 264, 275, 161 N.E. 486, which held that "[o]pinions, to be admissible, must result from a consideration of lawful elements constituting the benefit." That case involved the admissibility of testimony relating to value based solely on the appearance of the property. Neither *Van Schaack*, nor any of the other cases cited by the village, holds that experts may not consider median household income in an area in valuing real estate.

Our supreme court has given guidance as to the proper elements to be considered in arriving at an opinion of fair market value. (*Chicago & Evanston R.R. Co. v. Blake* (1886), 116 Ill. 163, 4 N.E. 488.) In *Blake*, an eminent domain case, the court stated:

"The uses and capabilities of a particular property; the prices at which like property in the neighborhood is held or offered; knowledge or observation of the growth and development of towns and cities; a general knowledge of trade and business, and of the commercial advantages or prospects of the place where the property is situated, are all matters more or less taken into account by the intelligent witness in forming his opinion as to the value of a particular piece of property." (116 Ill. 163, 167, 4 N.E. 488.)

Relying on *Blake*, this court has held that valuation experts, in arriving at their opinion of value, could consider such factors as a large fire which tripled insurance premiums, that the area had experienced racial change and riots, and that as a result of these factors mortgage insurance was almost impossible to obtain. *City of Chicago v. Baird* (1971), 132 Ill. App. 2d 644, 270 N.E.2d 259.

We observe that the textbook used for training Illinois assessors, published by the International Association of Assessing Officers, lists 16 categories of economic factors that affect the value of residential properties; among these factors are family income, price levels and

lender attitudes and policies. (Property Assessment Valuation 51-54 (International Association of Assessing Officers 1977).) Another textbook, The Appraisal of Real Estate, published by the American Institute of Real Estate Appraisers, also specifically refers to income levels, purchasing power and census studies as factors used to determine property value. The Appraisal of Real Estate 115, 65-69, 132-33 (American Institute of Real Estate Appraisers 1983).

In view of the foregoing authorities, we find that the trial court did not err in refusing to strike Holcer's testimony. We note that median income level was only one of numerous factors that Holcer relied upon in arriving at his opinion of value. Holcer testified that he also considered home size and style, the condition of the home and any special features, nearby industrial development, his personal observations of the assessment area on several occasions, his review of comparable sales and listing data for the area, and his familiarity with mortgage underwriting standards. We believe that the objection raised by the village goes to the weight of Holcer's testimony, rather than its admissibility. If the village believed that Holcer's testimony lacked credibility because it was based in part upon median income, it had the opportunity to bring that fact out on cross-examination.

■ The village additionally contends that Holcer's testimony concerning the median income level of persons residing within the assessment area was hearsay. Holcer testified that his determination of the median income level was extracted from United States census tracts. The village argues that since the objectors failed to introduce the census tracts into evidence, Holcer's testimony was inadmissible hearsay.

We find the village's argument unpersuasive in light of *Wilson v. Clark* (1981), 84 Ill. 2d 186, 193, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140. There, our supreme court adopted Federal Rule of Evidence 703, which provides as follows:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. Fed. R. Evid. 703."

As the *Clark* court observed, the Advisory Committee Note to Rule 703 states that allowing expert opinions based on facts not in evidence dispenses with " 'the expenditure of substantial time in producing and examining various authenticating witnesses.' " (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 194, 417 N.E.2d 1322.) The key element

in applying Rule 703 is whether the information upon which the expert bases his opinion is of a type that is considered reliable. (84 Ill. 2d 186, 193, 417 N.E.2d 1322.) Specific evidence of unreliability is a proper subject for impeachment of the expert's opinion. *Manning v. Mock* (1983), 119 Ill. App. 3d 788, 802, 457 N.E.2d 447.

In the present case, Holcer testified that economic data from census information was commonly relied upon by experts in arriving at real property valuation opinions. The village had the opportunity at trial to challenge the reliability of the United States census information during Holcer's cross-examination (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140), and it failed to do so. There is nothing which suggests that the information in question was unreliable. Accordingly, we cannot conclude that the trial court abused its discretion in admitting the testimony in question.

## II

■ The village next urges that the objectors violated the trial court's order *in limine* excluding evidence as to the economic or income status of the objectors. We disagree. The record before us clearly reflects the intent of the trial court, in ruling on the motion *in limine*, to allow general economic and demographic data to be presented. The court only barred evidence pertaining to the economic status of any particular objector. At no time did the objectors introduce evidence as to the specific financial circumstances of any of the objectors. Rather, the only financial figures used were general income level figures derived from census data. As a result, we find no violation of the motion *in limine*.

## III

■ The village further argues that the court erred in allowing the objectors to elicit testimony from Russell Prekwas on rebuttal concerning the fact that the estimated construction cost, as set out in the assessment roll, exceeded the amount of the low bid received for the project. This argument is without merit. Allowance of rebuttal testimony lies within the discretion of the trial court, and the court's ruling will not be set aside absent an abuse of discretion. (*Henderson v. Hudson* (1984), 121 Ill. App. 3d 780, 460 N.E.2d 10.) Generally, where no restriction is placed on the purpose for which a document is received, it becomes general evidence and remains so for the benefit of all parties. (*Wilkinson v. Mullen* (1975), 27 Ill. App. 3d 804, 327 N.E.2d 433.) Here, the village had the opportunity to request an in-

struction from the court limiting the purpose for which its own evidence, the assessment roll, might have been used. It did not do so and cannot now be heard to complain. Furthermore, the village's expert appraiser, Thomas Collins, testified that he spread the assessment roll and also considered "the costs involved" in determining the benefit to the property. Hence, since the village's own appraiser considered the estimated cost of the project in his valuation, the actual cost of the project as determined from the bid becomes relevant.

We note that the village relies on *City of Carlinville v. Anderson* (1922), 303 Ill. 247, 135 N.E. 407. That case is distinguishable and not controlling here since it involved the propriety of a jury instruction on surplus and deficiency. Accordingly, we find that the trial court did not err in allowing the rebuttal testimony complained of by the village.

## IV

■ The village also assigns error to certain closing argument remarks made by counsel for the objectors. Specifically, the village objects to counsel's conduct in reading to the jurors the affidavit to the assessment roll executed by the commissioner appointed to make the assessments. In the affidavit, the commissioner stated that he made a true and impartial assessment of the cost of the improvement upon the property benefitted by the improvement. The evidence adduced at trial showed that the village's expert, Thomas Collins, had assisted the commissioner in preparing the spread of the assessment. The village argues that the comments complained of were intended to impeach the commissioner by implying that he had falsely stated in an affidavit that he alone made the assessment. Such impeachment was improper, according to the village, because the commissioner was never called as a witness.

The record shows that the court sustained the village's objection to the portion of the closing argument complained of and instructed the jury to disregard the argument. Generally, when such action is taken by the court there is no reason to believe that the jury was prejudiced. (*Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 451 N.E.2d 1313.) We cannot conclude that the jury was influenced by the comments in question. As such, even assuming the comments were improper, no reversible error resulted.

## V

■ Next, the village contends that the jury's verdict was impermissibly based, not on the evidence, but rather solely "on the basis of

front footage of the parcels on the abutting roads." Initially, we observe that the village has failed to cite any portion of the record to support this argument. It is held that unless reference is made in an appellant's brief to those portions of the record supporting reversal, an appellant's argument will not be considered. 87 Ill. 2d R. 341(e)(7); *Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 463 N.E.2d 216.

■■ Assuming that this argument has not been waived, our review of the record reveals that, contrary to the village's assertion, all lots were not assessed by the jury at the same rate per front foot. As such, it is apparent that the jury's verdict was not based solely on front footage. We note, however, that the jurors were not precluded from using front footage as a factor in determining their assessment. As our supreme court stated in *City of Lewiston v. Braden* (1956), 9 Ill. 2d 620, 625-26, 138 N.E.2d 504:

> "Although it has often been said that a special assessment made solely on a front-foot basis, without regard to benefits, would be invalid, the commissioner is not precluded from taking front footage into consideration as an element in fixing the amount of the assessment." (Accord, *City of Belleville v. Miller* (1913), 257 Ill. 244, 247, 100 N.E. 946.)

Hence, even if the jurors used front footage as a factor in determining the amount of the assessment, no error resulted.

## VI

Finally, the village argues that the trial court erred in denying its motion for a judgment notwithstanding the verdict or, alternatively, for a new trial.

■■ ■ It is well established that judgment *n.o.v.* should be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) In making this determination, the trial court may not substitute its judgment for that of the jury as to the credibility of witnesses, nor may the court determine the preponderance of the evidence. (*Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 1087-88, 401 N.E.2d 1145.) The standard relating to the granting of a new trial differs from the standard for granting a judgment notwithstanding the verdict. (*Mizowek v. DeFranco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) On a motion for a new trial, a court must weigh the evidence and a new trial will be granted if the verdict is contrary

to the manifest weight of the evidence. (64 Ill. 2d 303, 310, 356 N.E.2d 32.) A motion for a new trial is addressed to the discretion of the trial court, and its decision will not be disturbed unless there is a clear abuse of discretion that affirmatively appears from the record. *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 401 N.E.2d 1145.

■■ In the present case, we find no reason to disturb the jury's verdict. The expert appraiser for the objectors testified that the benefits would be $1,000 to $1,500 per parcel. The village's expert testified that the amount of benefits would be approximately $4,000 per lot. The court granted the village's motion for a jury view of the assessment area and properly instructed the jurors as to what factors they were to consider in rendering their verdict. The jury, after having an opportunity to view the site of the proposed improvement and weigh the conflicting evidence, determined the amount of benefits to be well within the range testified to by the experts. The well-settled rule is that where a jury has viewed the premises and the amount awarded by the jury is within the range of valuation evidence submitted on behalf of the parties, the verdict will not be disturbed unless the verdict was a clear and palpable mistake or the result of passion or prejudice. (*Department of Public Works v. Lambert* (1952), 411 Ill. 183, 195, 103 N.E.2d 356; *Department of Public Works & Buildings v. Foreman State Trust & Savings Bank* (1936), 363 Ill. 13, 24, 1 N.E.2d 75.) Although these cases involved eminent domain proceedings, we believe that the foregoing rule is equally applicable here. There has been no showing that the verdict in this case was a clear and palpable mistake or the result of passion or prejudice.

Accordingly, based on the record before us, we conclude that the trial court properly denied the village's motion for judgment *n.o.v.* or a new trial.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

O'CONNOR and QUINLAN, JJ., concur.