THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC J. ROBLES, Defendant-Appellant.

Second District   No. 2—95—0527

Opinion filed July 20, 2000.

THOMAS, J., dissenting.

Kathleen L. Roach, Susan A. Weber, Eric H. Sussman, Neil H. Wyland, and Margaret L. Fitzpatrick, all of Sidley & Austin, of Chicago, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GALASSO delivered the opinion of the court:

Defendant, Eric J. Robles, was charged by indictment with 10 counts of first-degree murder and 2 counts of solicitation of murder for hire, for the stabbing deaths of his parents, Diana and Peter Robles. At his jury trial, defendant raised the affirmative defense of insanity. Following a jury trial, he was found guilty but mentally ill (GBMI) on all counts. After the duplicative murder charges were vacated, defendant was sentenced to a mandatory term of natural life imprisonment for the two counts of murder and to concurrent sentences of 35 years' incarceration for the solicitation-of-murder-for-hire offenses. Defendant appealed his conviction to this court, arguing *inter alia* that the GBMI statute (725 ILCS 5/115—4(j) (West 1992)) violates federal and state guarantees of due process. In *People v. Robles*, 288 Ill. App. 3d 935 (1997), this court reversed defendant's convictions and remanded the cause for a new trial, finding that the GBMI statute violated defendant's due process rights. The State's petition for *certiorari* was granted by the supreme court, which reversed this court's judgment, finding that the GBMI statute did not violate defendant's

due process rights. *People v. Lantz*, 186 Ill. 2d 243 (1999). This cause of action was then remanded to this court to address the remaining issues raised by defendant.

Said issues are (1) whether the trial court's refusal to answer the jury's questions about the definition of mental illness violated defendant's due process rights to a fair trial, (2) whether the GBMI statute violates state and federal guarantees of equal protection, (3) whether the trial court committed reversible error by allowing one of the State's experts, Dr. Hardy, to give speculative testimony regarding the alleged opinion of Dr. Hartman, a nontestifying witness, on the issue of defendant's sanity, and (4) whether the trial court committed reversible error by denying defendant the opportunity to put on evidence to rebut a report relied upon by the State's psychiatric experts.

Our previous opinion set out the general facts, and there is no need to reiterate the vast majority of them at this point. We include only facts necessary for the determination of particular arguments raised by defendant.

We will first address defendant's argument that the trial court committed reversible error in denying the surrebuttal testimony of Dr. Michael Rabin regarding the unreliability of Dr. David Hartman's report. Defendant maintains that Dr. Rabin was offered to prove that Dr. Hartman's report, which was relied upon heavily by both of the State's experts, was replete with errors and utterly unreliable. Defendant argues that the trial court's refusal to permit Dr. Rabin's surrebuttal testimony was clearly an abuse of discretion, which resulted in a manifest injustice to him. The State maintains that defendant was not entitled to attack the report of a nontestifying expert (Dr. David Hartman) by means of Dr. Rabin's testimony. The State also argues that defendant first should have objected to the reliability of Dr. Hartman's report when it was first mentioned or, at the very latest, when the prosecution's witnesses first indicated their use of it. The State further contends that the exclusion of Dr. Rabin's testimony, under these circumstances, must be deemed harmless error.

Initially, we note that the term "surrebuttal" is used by the parties to describe the point in the proceedings at which defendant sought to have Dr. Rabin testify in response to Dr. Hartman's report, which was relied upon by Drs. Hardy and Lahmeyer. However, the attempt to have Dr. Rabin testify is best viewed as occurring during defendant's rebuttal on the issue of his insanity defense. Accordingly, we will employ the term "rebuttal" in those instances that were referred to by the parties as surrebuttal.

To review, Dr. Ruth Kuncel, a psychologist, testified for defendant in his case in chief. In response, the State called two psychiatrists,

Drs. Henry Lahmeyer and Daniel Hardy, to counter Dr. Kuncel's testimony. It is unnecessary to review the subject testimony of Drs. Kuncel, Lahmeyer, and Hardy in detail, as their general testimony was set out in this court's previous opinion, *People v. Robles*, 288 Ill. App. 3d 935 (1997), and was further described by the supreme court in *Lantz*, 186 Ill. 2d at 250-51. During defendant's case, Dr. Kuncel, who conducted her own psychological testing of defendant, testified that at the time of the subject offenses defendant lacked the capacity to conform his behavior to the requirements of the law, *i.e.*, he was insane. Further, Dr. Kuncel testified that, prior to reaching this conclusion, she had reviewed the reports of Drs. Hartman, Lahmeyer, and Hardy.

In response, the State called Dr. Lahmeyer and Dr. Hardy to counter Dr. Kuncel's opinion. Both psychiatrists testified that they based their opinions in part on a report completed by Dr. Hartman, a psychologist, who had administered a number of psychological tests to defendant. During his testimony, Dr. Hardy quoted verbatim from that portion of Dr. Hartman's report that dealt with Hartman's conclusions regarding defendant's sanity. Dr. Lahmeyer also testified that he relied in part on Dr. Hartman's report. His testimony regarding defendant's psychiatric diagnosis used virtually the same terms that Hartman's report employed in describing defendant's mental condition. Dr. Hartman had been scheduled to testify for the State but was not called during rebuttal.

In Dr. Hartman's absence, defendant sought to have Dr. Rabin testify during rebuttal for the purpose of disputing the reliability of Dr. Hartman's report. The State objected, arguing that Dr. Rabin's testimony would be inappropriate rebuttal because Dr. Hartman's opinion was not substantive evidence and that Dr. Hartman had not testified regarding his report. The trial court agreed with the State's position, stating that Dr. Rabin's testimony was "an inappropriate way to impeach Dr. Hartman *** and also an attempt *** to discredit the testimony of the two psychiatrists that did testify." The trial court then suggested that the defense call Dr. Hartman, a fact that would indicate the importance of Hartman's report. The defense responded that it would subpoena Dr. Hartman but wanted to have Dr. Rabin present in the courtroom to assist in the questioning of Dr. Hartman. Defense counsel maintained that he did not have the expertise to cross-examine and/or impeach Dr. Hartman without Dr. Rabin's assistance. The trial court denied the defense's request for Dr. Rabin to provide in-court assistance in the questioning of Dr. Hartman. The defense did not call Dr. Hartman to testify during rebuttal.

The defense then made an offer of proof in which Dr. Rabin, a

psychologist, criticized the accuracy and reliability of Dr. Hartman's report regarding defendant. It is useful to describe in some detail the substance of Dr. Rabin's testimony. Dr. Rabin stated that he was a supervisor of forensic testing and evaluation for the Psychiatric Institute of the Circuit Court of Cook County and had testified as an expert in forensic psychology in many court proceedings. He stated that he had carefully reviewed Dr. Hartman's report and had found numerous mistakes and erroneous conclusions that would be misleading to anyone who read the report and was not able to independently analyze the underlying data. He further testified that psychiatrists are not competent to perform their own psychological testing and must therefore rely on psychologists to do all such testing for them.

Dr. Rabin took issue with Dr. Hartman's use of the Shipley Institute of Living Scale (Shipley test). According to him, the Shipley test was designed to check for early senility in geriatric patients and was inappropriate for use as an intelligence quotient (IQ) test for a 17- or 18-year-old high school student. He further opined that the report contained the scores of several items on the Shipley test that contained miscalculations. These errors had given defendant a higher IQ score than he actually had. Dr. Rabin also stated that the report erred by confusing the cognitive quotient (CQ) with IQ. He explained that, unlike the IQ, the CQ is not a measure of intelligence, as Dr. Hartman's report indicated. According to Dr. Rabin, the results of the Shipley test actually showed that defendant's IQ was in the borderline range, rather than the low-average range stated in the report.

Dr. Rabin also stated that the Minnesota Multiphasic Personality Inventory II (MMPI-II) administered by Dr. Hartman to defendant was an inappropriate test for defendant. He described the MMPI-II as a test designed for adults and stated that defendant should have been given a version of the test that is designed for adolescents and people with a history of learning disabilities. Additionally, Dr. Rabin pointed out that there was no indication in the report that Dr. Hartman had administered a reading test to defendant before the MMPI-II to determine whether he could read well enough to take the test properly.

Further, Dr. Rabin noted that, in the part of the report dealing with the MMPI-II's results, defendant was characterized as a "four eight code type." According to Dr. Rabin, the MMPI-II's results actually indicated that defendant was a "four six code type." As a result, Dr. Rabin stated that the report contained a completely irrelevant and inapplicable personality description of defendant. He noted that comparing a "four eight code type" to a "four six code type" was "like comparing apples to oranges." According to Dr. Rabin, this scoring confusion would result in a misunderstanding of the results by someone not versed in psychological testing.

Dr. Rabin also testified that the report omitted computer-generated results of the Millon test that indicated that defendant had a primary diagnosis of bipolar disorder and borderline personality disorder. When asked the significance of this omission, Dr. Rabin stated, "Again, it's misleading to anybody reading the report. They won't realize how severe the pathology is according to the test data." Dr Rabin continued:

"If you are going to quote from a computer-generated report, as I said earlier, you must either accept what your [computer-generated] report tells you or explain [in your report] why you don't want to accept it.

You can't ignore the middle sentence and quote on both sides of it. That's not, to me, proper.

You either have to accept what your computer-generated report tells you or you have to explain why you choose to reject it. You can't just ignore it."

Dr. Rabin stated that, if such an analysis of a test had been shown to him in his capacity as a supervisor of psychologists, he would have had the writing psychologist revise the report and make it more complete.

Dr. Rabin also took issue with Dr. Hartman's report's use of a computer-generated report regarding the Symptom Checklist 90-R (90-R) test administered to defendant. He testified that, rather than including all the results generated by the computer, Dr. Hartman's report included only those computer-generated results that would tend to support the State's contention of sanity and excluded those results that indicated that defendant's psychoticism scale was in the clinical range and that there was a likelihood of defendant having psychotic experiences. Dr. Rabin again noted that Dr. Hartman's report did not explain which portions of the 90-R were excluded. Dr. Rabin testified that he did not use computer-generated reports because he did not think they were worthwhile. However, he reiterated, "[I]f you do use a computer-generated report, you must either accept what it says or explain why you reject what it says. You cannot pick out what you want and ignore the rest."

Dr. Rabin was asked his impression of the Hartman report. He replied, "I feel it's a slipshod and sloppy job to do what he did."

Dr. Rabin further testified that Drs. Lahmeyer and Hardy relied on Dr. Hartman's report. He stated that it was common for psychiatrists to rely on the testing evaluations performed by psychologists. As Dr. Rabin had previously testified, psychiatrists are not competent to do their own psychological testing, as they have neither the training nor the skills to interpret the tests.

At the conclusion of this offer of proof, the State did not cross-

examine Dr. Rabin. Instead, the State renewed its objection to his testimony, and the trial court sustained the objection.

■ We note that rebuttal evidence is that which is offered to explain, repel, contradict, or disprove evidence presented by the opposing party. *Walters v. Yellow Cab Co.*, 265 Ill. App. 3d 331, 341 (1994). The allowance of rebuttal testimony is a matter left to the sound discretion of the trial court. *People v. Thomas*, 217 Ill. App. 3d 698, 703 (1991). A reviewing court will not interfere unless there has been a clear abuse of discretion resulting in a manifest injustice to the defendant. *Thomas*, 217 Ill. App. 3d at 703.

We do not agree with the trial court's assessment that in fact defendant sought to introduce Dr. Rabin's testimony for the purpose of impeaching Dr. Hartman, who did not testify. Rather, we agree with defendant that the purpose of Dr. Rabin's testimony was, as the State describes it, "to demolish one factor used by the prosecution experts in forming their opinions, in the hope that the jury would perceive that he had discredited their opinion in their entirety." This is the very essence of rebuttal (what was called surrebuttal) testimony. As the evidence demonstrates, both of the State's psychiatrists relied on Dr. Hartman's *report*. Specific evidence of unreliability is a proper subject for the impeachment of an expert's opinion. *In re Village of Bridgeview, Cook County, Illinois, Special Assessment*, 139 Ill. App. 3d 744, 751 (1985). As defendant contends, without the introduction of Dr. Rabin's testimony, the jury had no idea that, in the opinion of an expert in psychological testing, Dr. Hartman's *report*, which was clearly relied upon by Drs. Lahmeyer and Hardy in formulating their opinions as to defendant's sanity, contained inaccuracies, was misleading, and was biased towards finding defendant sane.

Further, we would add at this point that, if Dr. Hartman had testified, as had been indicated by the State, then defendant would at least have had the opportunity to cross-examine him on the reliability of the methods that he used to create his report, the alleged inaccuracies, as well as the validity of the conclusions he drew from the test results. However, for whatever reason, Dr. Hartman did not testify during the State's response to defendant's assertion of the insanity defense. (Moreover, such cross-examination, by itself, would likely have had little potential effect in undercutting the report's reliability, as Dr. Hartman, in all probability, would simply have defended his methods and analysis, and the jury would have gained little insight into defendant's perspective of the reliability of the disputed report.) Additionally, even if Dr. Hartman had been called as an adverse witness, as suggested by the trial court, defendant, without the ability to call Dr. Rabin to refute Dr. Hartman's testimony, effectively would have

been viewed as accepting the disputed report. In our opinion, the only meaningful response to the psychiatrists' reliance on the report was to call an expert such as Dr. Rabin to point out the inaccuracies, which could have affected the reliability of the report and the weight and credibility of the State's experts' testimony.

Further, the State's argument that this evidence should have been raised during defendant's case in chief and its reliance on *People v. Scott*, 148 Ill. 2d 479 (1992), are unpersuasive. Initially, we note that the fact that rebuttal evidence could have been introduced by a party in its case in chief will not render the evidence inadmissible in rebuttal. *People v. Williams*, 209 Ill. App. 3d 709, 723 (1991). Further, proper rebuttal evidence answers or contradicts affirmative matters raised by a party during its case in chief. *People v. Brown*, 232 Ill. App. 3d 885, 900 (1992). Additionally, evidence that would otherwise constitute proper rebuttal evidence is not rendered improper rebuttal evidence because it could conceivably have been offered during a party's case in chief. *Hoem v. Zia*, 239 Ill. App. 3d 601, 619-20 (1992).

In *Scott*, the defendant argued that the use of reports of a prior hospitalization, introduced by the State on rebuttal to contradict his insanity defense, was improper. Defendant argued that the reports were inherently unreliable. However, defendant did not object to the use of the reports at trial. The *Scott* court found that defendant had waived the issue on appeal and further concluded that the plain error rule did not apply, as no expert testified that the reports were so untrustworthy that they could not be relied on in the formation of a psychiatric opinion. *Scott*, 148 Ill. 2d at 526. Here, the State contends that *Scott* strongly suggests that defendant should have objected to the reliability of Dr. Hartman's report when it was first mentioned or, at the latest, when the prosecution's witnesses first indicated their reliance on it. The State argues that, at that time, the reliability of the report could have been assessed and that the reliance of the psychiatrists on it could have been determined. The State then maintains that the psychiatrists could then have had the opportunity "to reassess, affirm or withdraw their opinions in light of the evidence, if the final analysis resulted in a determination that the report was unreliable."

In light of the record in the instant appeal, we are not persuaded by the State's assertion that defendant should have objected to the reliability of the Hartman report when it was first brought up at trial or when the psychiatrists first spoke of their reliance upon it. As indicated above, Dr. Rabin testified that psychiatrists are not qualified to administer and analyze psychological tests. Additionally, Drs. Hardy and Lahmeyer conceded that they did not have the expertise to

administer and analyze psychological tests and that they had to rely on Dr. Hartman's report regarding the psychological testing of defendant. In such a circumstance, neither of the psychiatrists could have rendered a meaningful opinion regarding the reliability of Dr. Hartman's report. The failure to object to the reliability of the report, while fatal in *Scott*, cannot be viewed in the same manner here because the defendant's rebuttal expert was also attempting to establish that the inaccuracies may have affected the credibility of the State's experts.

Further, the State argues that, in any event, the exclusion of Dr. Rabin's testimony must be deemed harmless error. In support of this argument, the State contends that defendant's expert, Dr. Kuncel, reviewed Dr. Hartman's report and not only did not challenge the report but stated that it supported her conclusions. Defendant argues that the State misstates the record, asserting that Dr. Kuncel did not testify that Dr. Hartman's report supported her conclusion. A close examination of the record supports defendant's perspective. Dr. Kuncel, a psychologist with the ability to review and analyze both the test results and *data* set out in Dr. Hartman's report, did not testify that the *report* supported her conclusions. Instead, Dr. Kuncel stated that Dr. Hartman's *data* supported her findings concerning defendant. Thus, Dr. Kuncel's testimony related to the Hartman report does not support the State's assertion that it was harmless error for the trial court to deny Dr. Rabin's testimony.

In conclusion, the trial court committed reversible error by denying Dr. Rabin's testimony on rebuttal. Without question, Drs. Lahmeyer and Hardy, whose testimony constituted the bulk of the State's response to defendant's insanity defense, relied significantly on Dr. Hartman's report. Dr. Rabin's testimony, as set out in the offer of proof, cast substantial doubt upon the reliability of the Hartman report, which was the actual target of Dr. Rabin's testimony, rather than Dr. Hartman himself, as the trial court had found. As a result, this testimony called into question the credibility of the State's psychiatric experts and appeared to raise substantial doubts about the basis of their testimony. In this context, the jury should have been permitted to hear Dr. Rabin's testimony, which was critical to defendant's presentation of his insanity defense.

The dissent is somewhat misguided in its understanding of the basis upon which an expert's opinion may be challenged. It is true that the report relied upon by an expert must be of the type reasonably relied upon by experts in the field. Whether such a report meets the above test is a question of law to be decided by the trial court. It appears defendant was attempting to establish the unreliability of Dr.

Hartman's report through the testimony of Dr. Rabin, at which point defendant could have asked the trial court to strike the State's experts' testimony, as suggested by *People v. Scott*. The above standard does not preclude a party from establishing inaccuracies in a relied-upon report that may affect the expert's opinion. Pointing out inaccuracies of a serious nature could affect the reliability of the report, which would be a question of law; however, pointing out such inaccuracies could also affect the weight to be given to the expert's testimony and the credibility of the expert. The latter issues should be resolved by the trier of fact.

It is true, as suggested by the dissent, that pointing out inaccuracies could cast doubt in the minds of the jurors as to the legitimacy of the State's experts. It is also true that casting doubt in a criminal proceeding is a defendant's fundamental right.

Given this determination, we find that it is unnecessary to address defendant's arguments related to the jury questions posed to the trial court and Dr. Hardy's testimony regarding Dr. Hartman's opinion as to defendant's mental condition at the time of the subject murders.

■ However, we will address defendant's argument that the GBMI statute violates state and federal constitutional guarantees of equal protection by creating a classification that has no rational basis. Specifically, defendant argues that, in cases where the insanity defense is raised, juries are presented with a potential verdict of guilty but mentally ill and thereby misled into believing that there is a compromise position available between guilt and innocence. Defendant points out that, in contrast, defendants presenting other defenses are not subject to such compromise verdicts. In response, the State argues that defendant has failed to demonstrate a violation of equal protection.

In *Lantz*, the supreme court stated in relevant part:

"The defendants also briefly raise an equal protection challenge to the GBMI statute. Having found that the GBMI statute violates due process, the appellate court in No. 83641 (*Robles*, 288 Ill. App. 3d 935), did not address this additional argument. It is readily apparent that the statute bears a rational relationship to a legitimate governmental interest. We have already identified several legislative purposes in enacting the GBMI statute. As we have noted, the verdict helps the jury in determining whether someone is insane, in identifying offenders who are mentally ill, and in sentencing of mentally ill offenders. We believe that these aspects of the statutory scheme are legitimate purposes, and that the legislation bears a rational relationship to the goals. See *United States ex rel. Weismiller v. Lane*, 815 F.2d 1106, 1110-12 (7th Cir. 1987) (rejecting

equal protection challenge to former version of Illinois GBMI statute); *State v. Neely*, 112 N.M. 702, 708-09, 819 P.2d 249, 254-55 (1991) (rejecting equal protection challenge to New Mexico's GBMI statute)." *Lantz*, 186 Ill. 2d at 260.

We conclude that this language, which finds the GBMI statute constitutional as it relates to equal protection concerns, controls our determination of defendant's equal protection argument.

For the reasons stated above, we reverse the judgment of the circuit court of Du Page County and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

McLAREN, J., concurs.

JUSTICE THOMAS, dissenting:

I disagree with the majority's conclusion that the trial court committed reversible error by failing to allow the defendant's expert, Dr. Rabin, an opportunity during rebuttal to attack the reliability of Dr. Hartman's report, which was relied upon by the State's experts, Drs. Hardy and Lahmeyer, as the basis of their opinions that there was no evidence that the defendant was insane. The defendant did not object to the State's experts' reliance on Dr. Hartman's report and did not challenge the reliability of the underlying report when it was first mentioned by the State's witnesses as a basis for their opinions. In fact, the defendant's own expert, Dr. Kuncel, utilized the data from Dr. Hartman's report in rendering her opinion in the defendant's case in chief. I believe that the defendant waived the right to challenge the reliability of Dr. Hartman's report by not challenging the State's experts' opinions on foundational grounds. In *Wilson v. Clark*, 84 Ill. 2d 186, 192-96 (1981), the Illinois Supreme Court adopted Federal Rules of Evidence 703 and 705 (Fed. Rs. Evid. 703, 705) and held that an expert witness may base his opinion on information that has not been admitted into evidence so long as that information is *reliable* and is of the type reasonably relied upon by experts in that field. *Modelski v. Navistar International Transportation Corp.*, 302 Ill. App. 3d 879, 885 (1999). An expert's opinion is only as valid as the basis for the opinion. *Modelski*, 302 Ill. App. 3d at 885. The admission of an expert's testimony requires the proponent to lay an adequate foundation for the evidence, *i.e.*, to establish the reliability of the evidence, and if the proponent fails to do so, it is the responsibility of the opponent to challenge the reliability of the basis on cross-examination. *People v. Contreras*, 246 Ill. App. 3d 502, 510-11 (1993). Moreover, it is for the

trial court, in the exercise of its discretion, and not the jury, to determine whether the foundational requirements have been met. *Aguinaga v. City of Chicago*, 243 Ill. App. 3d 552, 562 (1993).

In its simplest terms, the defendant, in choosing not to object to Dr. Hartman's report as a sufficient basis for the State's experts' opinions and choosing rather to elicit testimony from his own expert on rebuttal as to the reliability of the report, attempted to convert a question of law to be determined by the trial judge (*i.e.*, was the report a sufficient basis for the State's experts' opinions) into a question of fact for the jury (*i.e.*, would the jury believe that Dr. Hartman's report was fraught with errors, and therefore, the jury rather than the judge would decide whether to reject the State's experts' opinions based on an inadequate basis for those opinions).

Here, the defendant did not challenge the reliability of the report when he was required to do so. Instead, the defendant prejudiced the State by waiting until the State's witnesses had already rendered their opinions and were unable to defend their reliance on the report. The majority claims that allowing Dr. Rabin to testify in rebuttal about the reliability of Dr. Hartman's report was proper to impeach Drs. Hardy and Lahmeyer. I disagree. If Dr. Hartman's report was unreliable as the basis for the experts' opinions, as the defendant now claims, then the State's experts' opinions lacked a proper foundation for admissibility. In that case, the defendant should have objected initially and, at the very least, cross-examined the State's experts on the reliability of the report. By failing to do so, the defendant waived the matter.

I agree with the State that *People v. Scott*, 148 Ill. 2d 479 (1992), strongly supports its position that the defendant should have challenged the reliability of the report when the State's witnesses first mentioned their use of it. In *Scott*, as in the present case, the defendant argued that the reports were inherently unreliable. The supreme court noted that "[i]f, as the defendant argues, the reports were unreliable, he should have objected on this ground when the reports were first discussed at trial." *Scott*, 148 Ill. 2d at 526. Thus, *Scott* stands for the proposition that a defendant can and must object to a report as unreliable when the report is first discussed at trial by the expert relying upon it.

It is important to note that, pursuant to *Wilson*, Dr. Hartman's report was never introduced as evidence in this case. It was only presented to the jurors as a basis for the State's experts' opinions. Dr. Rabin never testified in rebuttal as to his opinions in this case but, rather, chose to testify only as to the inaccuracy of the Hartman report. The only conceivable purpose of the defendant in this was to attack the foundation of the State's experts' opinions and, through this tactic,

cast doubt in the minds of the jurors as to the legitimacy of those opinions. However, the *foundation* of the experts' opinions was a matter solely within the province of the trial judge.

I believe that the defendant was required to give the trial court an opportunity to consider the reliability of the report as a matter of law. At that point, the State would have had an opportunity to present evidence that favored the reliability of the report. Because the defendant failed to object to the reliability of the report, I would hold that the trial court properly refused the defendant's rebuttal testimony from Dr. Rabin to attack the report. Accordingly, I dissent.