THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VERNON DANIELS, Defendant-Appellant.

Second District   No. 2—86—1181

Opinion filed July 21, 1988.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, John

X. Breslin, and Rita Kennedy Mertel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Vernon Daniels, was charged with one count of aggravated criminal sexual assault. (Ill. Rev. Stat. 1987, ch. 38, par. 12–14(b)(1).) Defendant was found guilty by a jury and sentenced to 15 years' imprisonment in the Department of Corrections. On appeal, defendant contends: (1) he was not proved guilty beyond a reasonable doubt; (2) he was prejudiced by the introduction of other crimes evidence; (3) he was denied his sixth amendment right to present a defense; (4) the trial court abused its discretion in permitting the State to use his prior conviction of indecent liberties for impeachment purposes; (5) the examining physician was improperly permitted to testify to matters beyond his expertise; and (6) certain comments made by the prosecutor in closing and rebuttal argument deprived him of a fair trial. We agree with defendant's second contention and therefore reverse and remand for a new trial.

The information alleged that on July 28, 1985, defendant engaged in anal intercourse with his 11-year-old stepson, R.G. The charge stemmed from a neighbor's telephone call to an abuse hotline stating that R.G. and his younger sister, B.D., were in possession of sexually explicit magazines and a notebook containing sketches of sexual activity. Subsequent investigation by police resulted in the removal of R.G. and B.D. from the defendant's home and charges against the defendant and his wife, Estella. Estella Daniels was convicted at a separate bench trial of aggravated criminal sexual assault stemming from an incident with R.G. We affirmed the conviction on appeal (*People v. Daniels* (1987), 164 Ill. App. 3d 1055, 518 N.E.2d 669), and leave to appeal to the Illinois Supreme Court was denied.

At the defendant's trial, R.G. testified that during the pertinent time period he lived in Rockford with defendant, Estella, and B.D. On July 26, 1985, Estella and B.D. traveled to Peoria to attend a funeral; R.G. and defendant remained in Rockford. Between 11:30 a.m. and 12:30 p.m. on Sunday, July 28, R.G. and defendant watched wrestling on television in the living room. After the wrestling program was over, R.G. and defendant played a video game for a short time. Defendant then left the room, and when he returned, R.G. observed that defendant was "mad." Defendant told R.G. to go into defendant's bedroom, take off his clothes, and lay on the bed. Defendant followed R.G. into the bedroom, and R.G. did as he was told. Defendant removed his own clothes and ordered R.G. to insert defendant's penis

into R.G.'s anus. R.G. "grabbed ahold" of defendant's penis and directed it toward his anus. The defendant's penis went inside his anus and remained there for a "long time" while defendant moved about. R.G. was in pain during the act. According to R.G., defendant had done this to him approximately five or six times since he was eight years old.

R.G. further testified that he, defendant, Estella, and B.D. engaged in numerous "family touching" sessions. During these encounters, the family would sit naked in a circle and engage in a variety of sexual acts. R.G. testified to the following acts: sexual intercourse with his mother and "playing" with her vagina; defendant, Estella, and B.D. touching his penis; placing his hands around defendant's erect penis and moving it back and forth; and defendant placing his penis in B.D.'s anus. Defense counsel's objection to inquiry on the defendant's anal intercourse with B.D. was overruled. On cross-examination, defense counsel inquired into the number of times defendant had intercourse with B.D. and the time period when these acts occurred. R.G. could not specify how many times he observed defendant have intercourse with B.D.; the incident he recounted on direct examination occurred when R.G. was eight years old.

Regarding the magazines and notebook, R.G. testified he found the magazines underneath defendant's bed, and that defendant had shown him one or two of the magazines. On cross-examination, defense counsel called R.G.'s attention to his testimony at Estella's trial that he found one or two of the magazines in the trash. R.G. then admitted that he did find some of the magazines in the trash.

R.G. identified a light used by defendant when he made movies of the family engaging in various sex acts. On cross-examination, defense counsel recalled that at Estella's trial, R.G. testified no extra lighting was used to make the movies. R.G. responded that he must have misunderstood the question. Although R.G. could not remember when the movies were filmed, he did state five or six movies were made. In the summer of 1984, defendant showed R.G. a movie of a man and a woman engaged in sexual activity. Estella and B.D. were also present. The movie was shown on a projector recovered from the defendant's home.

R.G. admitted he lied when he told the police the movies had Mexican names, that other people were involved in the movies, that the movies were made in other people's homes, and when he took the police around Rockford to show them where the movies were made. He also lied when he told Detective Burgess defendant transferred some of the movies to video discs, he had transferred some of the movies to

discs himself, and he saw money exchanged for the movies. R.G. further acknowledged he lied when he told authorities his mother had killed someone and he had put the body in a bag. R.G. admitted he gave authorities several names for the person who was killed and led police around the county looking for the burial site. R.G. stated a body was not found because the story was a lie. R.G. added he did not include everything that he testified to in his statements to the police and to a counseling organization because he was covering up for his parents at their insistence. Regarding his propensity to lie, R.G. testified he did not like to tell lies anymore, all the things he testified to at this trial were true, and he had learned that lying is not a part of his life.

B.D. testified that during part of July 1985, she was out of town with her mother because of a death in the family. B.D. did not know the exact date in July, stating they left on a Friday and returned on Sunday night. B.D. described episodes of "family touching," which began when she was six years old. B.D. initially stated defendant never touched her, but, after extensive examination, she stated the defendant inserted his penis in her anus. B.D. recalled the filming of the movies, and she identified the light recovered from defendant's house which was used during the filming. She did not know when the movies were filmed or how old she was at the time, but estimated five or six movies were made. B.D. also recalled seeing a film of a man and woman engaged in sexual activity on the movie projector in 1984.

On cross-examination, B.D. stated she did not know what sexual intercourse was, and when she said that R.G. had sex with her, it meant that he touched her vagina with his hand. When her father had sex with her, she meant that he had anal intercourse with her. Neither R.G. nor defendant ever put anything into her vagina. B.D. added that she saw R.G. have sexual intercourse with their mother, meaning vaginal intercourse. B.D. also admitted that she had anal intercourse with a neighbor. B.D. testified she did not tell anyone about having sex because she was scared. She became "unscared" in October 1985 but did not tell anyone about having sex until August 1986; she was still a little scared at Estella's trial.

On redirect examination, B.D. stated she told Detective Burgess in 1985 about having anal intercourse with defendant. She admitted she did not really know what sexual intercourse meant, but said having sex meant putting a penis into a vagina. B.D. added her mother and father told her she would get into trouble if she talked about having sex. B.D. stated she was telling the truth because she was not afraid anymore.

For the defense, Charles DeHaan, a physician in emergency medicine at Swedish American Hospital, testified that he examined R.G. and B.D. on August 23, at the request of the Department of Children and Family Services. An examination of R.G.'s rectum and genital area showed no abnormalities and no physical evidence of trauma. R.G. denied any sexual contact. B.D.'s hymen was intact and her rectum showed no trauma, tears or abnormalities. B.D. also denied any sexual contact.

On cross-examination, DeHaan was asked, "Isn't it true that in many of these cases when you examine for sexual abuse these children who are actual victims do deny sexual contact with persons?" Over defense objection, DeHaan responded that children often deny contact even though they are victims. DeHaan added that his examination of B.D. was consistent with her having had no sexual penetration in the vaginal area; an examination of the rectal area would not necessarily show damage as a result of sexual penetration. DeHaan stated if R.G. had engaged in anal intercourse on July 28, a rectal examination would not necessarily show signs of trauma. On redirect examination, DeHaan opined that trauma to the rectal area would not necessarily be present 26 days after the insertion of an adult erect penis.

Netty Steffani, the Sunday School secretary for the Kishwaukee Baptist Church, testified that on July 28, the entire Daniels family was present in church. Steffani stated defendant and Estella were regular attenders, but Estella was absent from church on July 21.

Defendant testified that on July 28, he went to church with Estella, R.G. and B.D. They arrived at 9:30 a.m. and left at 11 a.m. The family then went home, watched wrestling from 11:30 a.m. to 12:30 p.m., ate lunch, and went fishing until sundown. Defendant denied having any sexual contact with R.G. on July 28. He added he was not involved in any "family touching" sessions.

Defendant stated Estella and B.D. travelled to Peoria on July 20 to attend a funeral. When defendant was asked if he had engaged in "family touching" on July 21, the State's objection was sustained. Defendant testified he had never touched either of the children in a sexual manner. The magazines presented at trial were found by R.G. while defendant and R.G. were looking for aluminum cans in the forest preserve garbage cans. Defendant told R.G. to put the magazines back, but R.G. must have put them in the plastic bag with the aluminum cans without defendant noticing. According to defendant, none of the magazines came from under his bed. The film depicting the man and woman engaging in sexual activity was purchased by Estella

from his sister and was shown only in their bedroom. The children were not allowed to see the movie. Defendant did not make or participate in any home movies depicting sexual activity. No threats were made by defendant to the children about their testifying against him. Defendant stated that R.G. had a lot of anger toward him and a propensity for lying about school work and other things.

Defendant admitted he pleaded guilty to one count of indecent liberties with a child in 1981. Defense counsel's motion *in limine* to exclude introduction of his prior conviction was denied.

On appeal, defendant first contends the State failed to prove him guilty beyond a reasonable doubt because the only evidence the offense occurred was the testimony of R.G.—an admitted, repeated liar who hated the defendant because he was not his natural father. Defendant asserts R.G.'s testimony as a whole renders the recital of events on July 28 unbelievable. In support, defendant refers to this court's finding that R.G.'s testimony at his mother's trial was not alone sufficiently clear and convincing to sustain the conviction. *People v. Daniels* (1987), 164 Ill. App. 3d 1055, 1074, 518 N.E.2d 669, 682.

■■ There is no denying that R.G. had a motive and propensity to lie. R.G. admitted hating defendant and admitted he had lied on numerous prior occasions. R.G.'s penchant for telling falsehoods led this court to conclude that his testimony at his mother's trial was insufficient standing alone to sustain her conviction for aggravated criminal sexual assault. This court stated in pertinent part:

"We find that R.G.'s testimony alone, although not entirely unconvincing, was not of the 'clear and convincing' character necessary to sustain the defendant's conviction. Corroborated as it was, however, by that of his sister, we believe the State sustained its burden of proof. ***

Although there were some obvious reasons why R.G. would have lied in the beginning about not having had sexual contact with his mother ***, his numerous admitted instances of lying for either a vindictive or no stated reason at all regarding other person's involvements in the movie making—including his grandparents—cannot but help cast a pall over that which he offered as the truth. Accordingly, B.D.'s corroborative testimony was necessary to the defendant's conviction, and we find it was sufficiently corroborative of R.G.'s testimony to permit affirmance of the court's judgment." (*People v. Daniels* (1987), 164 Ill. App. 3d 1055, 1074, 518 N.E.2d 669, 682.)

R.G.'s testimony in the present case was the only direct evidence of

the sexual assault. No substantial corroborating evidence was presented—there were no eyewitnesses, no medical evidence, the defendant did not admit to the crime, and there was no prompt complaint. (*People v. Morgan* (1986), 149 Ill. App. 3d 733, 738, 500 N.E.2d 1121, 1125.) Therefore, in order to sustain the defendant's conviction, we must conclude that R.G.'s testimony at defendant's trial was clear and convincing.

■■ ■ Generally, a court of review will defer to the jury's verdict when guilt or innocence rests solely on the credibility of the complainant and the defendant. (*People v. Du Pree* (1987), 161 Ill. App. 3d 951, 962, 514 N.E.2d 583, 589.) Here, however, our finding on R.G.'s credibility at his mother's trial impedes such an easy resolution of this argument. Nevertheless, for the following reasons, we conclude R.G.'s testimony in the present case was sufficiently clear and convincing to sustain the guilty verdict returned by the jury.

First, the jury trial in the case at bar took place seven months after the bench trial in Estella's case. During that period, R.G. engaged in therapy and was enrolled in a special school. At the present trial, R.G. stated he now realized lying is improper behavior and lying is no longer a part of his life.

Second, while R.G.'s admitted lies in the present case are substantially similar to his admitted lies at Estella's trial, the lies do not directly impact on the incident forming the basis of the charge as they did in the previous trial. This court specifically focused on "his numerous admitted instances of lying *** regarding other persons' involvements in the movie making." (*Daniels*, 164 Ill. App. 3d at 1074, 518 N.E.2d at 682.) The incident upon which Estella's conviction was based purportedly occurred during a movie making session involving Estella, defendant, R.G., and B.D. Therefore, the lies about other persons' involvement in movie making directly impacted on the incident charged. Here, while R.G. admits to the same lies, they now involve matters collateral to the incident upon which defendant's conviction is based. This factor distinguishes two of the cases relied on by defendant. (*People v. Morgan* (1977), 69 Ill. 2d 200, 370 N.E.2d 1063; *People v. Kolden* (1962), 25 Ill. 2d 327, 185 N.E.2d 170.) The other two cases relied on by defendant are distinguishable because they involved instances where the complainant's testimony of the incident was inherently unbelievable. (*People v. Mathis* (1985), 133 Ill. App. 3d 1027, 479 N.E.2d 966; *People v. Higgins* (1979), 71 Ill. App. 3d 683, 388 N.E.2d 1339.) Such was not the case here.

Based on the foregoing reasons, we conclude R.G.'s testimony at defendant's trial was sufficiently clear and convincing to alone sustain

the jury verdict.

Defendant next argues the trial court erred in permitting testimony concerning defendant's sexual intercourse with B.D. because this other crimes evidence in no way corroborated R.G.'s testimony and severely prejudiced the jury. Defendant contends the error was exacerbated by the State's comment in closing argument that defendant "destroyed two children." The State responds this argument was waived, it is without merit, and, if any error occurred, it was harmless.

■■ ■ We agree that defendant failed to properly preserve this issue for appeal. Although defendant objected immediately after the inquiry regarding defendant's sexual intercourse with B.D. and raised the issue during the jury instruction conference, the defendant waived this portion of the argument by: (1) raising the wrong objection at trial; (2) pursuing a similar line of questioning on cross-examination (*People v. Gully* (1986), 151 Ill. App. 3d 795, 799, 502 N.E.2d 1091, 1094); and (3) failing to include this contention in his post-trial motion (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129). Defendant waived the closing argument portion by failing to object during the closing argument and by failing to include any reference to the objectionable remark in his post-trial motion. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091, 1093.) Defendant acknowledges the waiver problems and requests we consider the issue as plain error. (107 Ill. 2d R. 615(a).) Because the evidence was closely balanced and the error, in our opinion, was of such magnitude that the defendant was denied a fair trial, we shall invoke the plain error doctrine. *Lucas*, 88 Ill. 2d at 251, 430 N.E.2d at 1094.

■■ Evidence of sexual misconduct with children other than the complainant is admissible only if it is relevant for purposes other than showing a defendant's propensity to commit the crime charged. These other purposes include: intent, motive, identity, absence of mistake, knowledge, common design, scheme, or plan, or *modus operandi*. (*People v. Esterline* (1987), 159 Ill. App. 3d 164, 168, 512 N.E.2d 358, 361.) A review of the pertinent case law indicates that *modus operandi* is generally the avenue for admitting into evidence separate acts of sexual misconduct with other children at other times and places. (*People v. Partin* (1987), 156 Ill. App. 3d 365, 369-71, 509 N.E.2d 662, 664-65; *People v. Taylor* (1987), 153 Ill. App. 3d 710, 717-18, 506 N.E.2d 321, 326-27.) Showing intent, guilty knowledge, accident or mistake through such other crimes evidence has been rejected as unnecessary because these factors are shown by testimony concerning the act itself. *People v. Rogers* (1926), 324 Ill. 224, 233, 154 N.E. 909,

912; see *People v. Torres* (1981), 93 Ill. App. 3d 718, 722-23, 417 N.E.2d 728, 731-32; *People v. McMillan* (1980), 86 Ill. App. 3d 208, 211, 407 N.E.2d 207, 210 (evidence of acts with 15-year-old daughter inadmissible to show defendant's intent regarding crime charged against 13-year-old daughter).

Here, the charge against defendant was predicated on a single act of sexual assault against R.G. outside the presence of Estella and B.D. The allegedly improper testimony concerned defendant's misconduct with B.D. during one of the "family touching" sessions. Defendant argues this testimony served no other purpose than to show defendant's propensity to engage in sexual misconduct with his children. The State on appeal argues the testimony was admissible because it established the relationship and familiarity between the parties, it corroborated R.G.'s testimony, and it was part of the *res gestae*.

■ We reject the State's first two reasons for admissibility because those are the grounds for admitting evidence of other acts with the complainant, not other acts with other children. (*Esterline*, 159 Ill. App. 3d at 168-69, 512 N.E.2d at 361.) Furthermore, testimony of defendant's sexual intercourse with B.D. was unnecessary to prove relationship and familiarity. (*Rogers*, 324 Ill. at 233, 154 N.E.2d at 912.) The State attempts to distinguish this case from the aforementioned cases on grounds the sexual acts with B.D. occurred in the presence of R.G. While it is true the other crimes evidence in the other cases occurred outside the presence of the complainant, we agree with defendant that this distinction is insignificant.

■ The State's *res gestae* argument was not raised below and is therefore waived. Regardless, the argument is without merit because the incident with B.D. did not occur at or about the same time as the crime charged (*People v. Crocker* (1962), 25 Ill. 2d 52, 54-55, 183 N.E.2d 161, 162), nor was it part of a continuous narrative that led to the defendant's arrest. (Compare *People v. Demeron* (1987), 153 Ill. App. 3d 440, 444, 505 N.E.2d 1222, 1225.) To invoke *res gestae* in the present case would emasculate the evidentiary rule prohibiting the admission of other crimes evidence.

■ Assuming error, the State argues it was harmless because the evidence against the defendant was overwhelming. As we have indicated, the evidence against the defendant was far from overwhelming. Therefore, the improper admission of other crimes evidence involving defendant's daughter and argument based thereon was not harmless.

Having determined that defendant is entitled to a new trial, we decline comment on the remaining issues raised on appeal except for

one remark made by the prosecutor during closing argument which we consider improper and prejudicial.

During closing argument the prosecutor stated the following:

> "They (R.G. and B.D.) are not normal children anymore, it is going to take a long time, a lot of therapy to make them normal because of the things he (defendant) did."

Defendant argues this comment had no bearing on his guilt, did not have any basis in the record, and improperly focused on the hardship to the victim. The State contends the comment was based on reasonable inferences drawn from defendant's testimony that no one ever complained to him about the conduct of either child and the "kids always just played and got along good," R.G.'s testimony that he was in a special school and had talked to counselors, and B.D.'s testimony that she had been in counseling for an extended period of time.

In *People v. Gillman* (1980), 91 Ill. App. 3d 53, 60-61, 414 N.E.2d 240, 245, this court found it was error to permit the prosecutor to present evidence the victim had undergone psychiatric treatment where it appeared the testimony was deliberately intended to elicit the sympathy of the jury and prejudice the defendant. Similarly, in *People v. Fuelner* (1982), 104 Ill. App. 3d 340, 351-52, 432 N.E.2d 986, 995, the court found testimony of complainant's suicide attempt and her five-week hospitalization in a psychiatric ward was irrelevant to defendant's guilt or innocence and prejudiced the jury against defendant.

Testimony and prosecutorial comment regarding psychiatric treatment has been found admissible where it has relevance beyond eliciting jury sympathy. (*People v. Brown* (1982), 107 Ill. App. 3d 576, 437 N.E.2d 1240.) In *Brown,* the record revealed that defense counsel was willing to have the complainant's psychiatric history brought out because it was consistent with his theory of defense, *i.e.,* complainant was a mixed-up, fantasizing child. Therefore, the court did not find reversible error in the prosecutor's comment in closing argument that complainant was seeing a psychiatrist because of what had transpired. *Brown,* 107 Ill. App. 3d at 582-84, 437 N.E.2d at 1245-47; see *People v. Tannahill* (1987), 152 Ill. App. 3d 882, 504 N.E.2d 1283 (prosecutor's reference to complainant being traumatized was a reasonable inference in sexual abuse case).

While *Brown* and *Tannahill* may support the introduction of evidence and comment on R.G. and B.D.'s testimony concerning their mental health treatment during the period between their removal from the defendant's home and their testimony at trial, they do not support comment on R.G. and B.D.'s future need for lengthy treat-

ment to return them to normalcy. Nor does the record provide support for such a far-reaching statement by the prosecutor. There was no testimony, expert or otherwise, on R.G. and B.D.'s future need for psychiatric treatment or whether they were normal children or not. Consequently, it is apparent this comment served no other purpose than to unduly prejudice the defendant in the eyes of the jury. Such improper comment should be avoided on retrial.

For the foregoing reasons, the defendant's conviction is reversed, and the cause is remanded to the circuit court for a new trial.

Reversed and remanded

LINDBERG, P.J., and INGLIS, J., concur.