THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDY LEE THOMAS, Defendant-Appellant.

Fifth District No. 5—89—0142

Opinion filed August 23, 1991.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, and Lori L. Mosby, of State Appellate Defender's Office, of Springfield, for appellant.

Kathryn Dobrinic, State's Attorney, of Hillsboro (Kenneth R. Boyle, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

After a jury trial, defendant, Randy Lee Thomas, was found guilty of murder, attempted murder, and two counts of armed robbery based upon a theory of accountability. Defendant was sentenced to 60 years in the Department of Corrections for murder, 30 years for attempted murder, and 60 years for armed robbery. In this cause, defendant raised six issues, namely: (1) whether the trial court erred in allowing the State to present rebuttal evidence concerning telephone records from defendant's home and defendant's employment status, (2) whether the trial court erred in refusing defense counsel's tendered instructions which stated that defendant could not be held accountable merely by his presence at the crime scene, (3) whether defendant's conviction must be reversed because the jury was not instructed as to the mental state required for the offense of armed robbery, (4) whether the trial court abused its discretion in sentencing defendant, (5) whether defendant's conviction for armed robbery is a lesser-included offense of defendant's felony murder conviction, and (6) whether the trial court erred in sentencing defendant to an extended term on his armed robbery conviction. We affirm in part and vacate in part. The facts necessary for an understanding of this case are as follows.

Sharon Lynn testified that she left her house at about 6:15 a.m. and arrived at the Farmersville Shell station at about 6:17 a.m. on September 3, 1988. Upon arrival, she noticed her husband, Walter Lynn, inside the station. She began to pump gas into her car, and her husband came out of the station to finish pumping her gas. She en-

tered the service station and purchased her gas and two cans of soda from the attendant, Robert Bishop. Mrs. Lynn identified defendant as being in the store at that time. Walter Lynn had entered the store prior to defendant's arrival and testified that defendant entered the store soon after he did. Mr. Lynn testified that as he drove away, he saw defendant enter the store with Tuhran Lear, a codefendant tried separately, with whom defendant had been traveling.

Defendant and Lear reentered the store and asked where the rest rooms were located. While defendant engaged Bishop concerning directions to Chicago, a shot was fired from the direction of the bathroom. Lear had fired at and wounded Bishop. Another shot was fired while Bishop lay motionless on the floor. Gregory McAnarney, the station manager, then entered the office and was shot and killed by Lear. While Bishop lay on the floor, his wallet was taken from his pants pocket.

Susan Birrell testified that she had been traveling northbound on Interstate 55 on September 3, 1988, with her friend, Rick Stinebaugh. She stopped in Farmersville to use the rest room at the service station. As Ms. Birrell entered, she saw Lear by the door and another man facedown in a pool of blood. She quickly realized what had occurred and began to exit. Lear brandished a revolver and instructed her to come back. Disregarding his command, she called to Stinebaugh and walked back to her car.

Defendant and Lear departed and drove back toward St. Louis, Missouri, on Interstate 55. They were apprehended by police and taken into custody.

The charges against defendant were based on the theory of accountability. Defendant testified that he had known Lear for about 1½ years. He characterized the relationship as casual. Lear had, according to defendant's testimony, helped him run errands on September 2, 1988. They returned to defendant's apartment at approximately 7 p.m. that evening. The notion of making a trip to Chicago had allegedly been brought about by a telephone call Lear had made from defendant's apartment to Lear's family in Chicago on September 2 concerning collecting some money. However, the State produced defendant's telephone records showing that no such call to Chicago occurred on September 2, 1988. The phone records revealed that three calls had been made from defendant's apartment to Chicago on August 25, 1988. Defendant testified that he agreed to finance the trip to Chicago and be reimbursed later by Lear. Defendant stated that he had never been to Chicago, so he agreed to go.

Defendant further testified that he had been temporarily laid off from his place of employment. When asked by the State if he had been fired, the defense objected, and the objection was sustained as beyond the scope of direct. The State then presented rebuttal evidence showing that defendant had been terminated as of August 22, 1988.

Defendant's first issue on appeal is whether the circuit court erred in allowing the State to present rebuttal evidence. Defendant specifically contends that the court erred in admitting (A) defendant's telephone records to contradict his testimony that Lear had placed a telephone call on September 2, 1988, to Chicago from defendant's telephone because such was impeachment on a collateral matter, and (B) testimony of Renee Difore that defendant had recently been fired from his job because defendant's employment status was a collateral matter which, when originally raised by the State, was ruled to be inadmissible as outside the scope of direct examination.

We initially note that application of the collateral-noncollateral distinction is best left largely to the discretion of the trial court. (*People v. Collins* (1985), 106 Ill. 2d 237, 269-70, 478 N.E.2d 267, 281.) This court has held that where defendant objects to certain testimony on direct examination, but then questions the witness on cross-examination concerning the allegedly inadmissible testimony, any error is waived for purposes of appeal. *People v. Gully* (1986), 151 Ill. App. 3d 795, 799, 502 N.E.2d 1091, 1094; see also *People v. Daniels* (1988), 172 Ill. App. 3d 616, 527 N.E.2d 59.

■ Assuming, *arguendo*, that the error was not waived for purposes of appeal, the issue of the telephone call to Chicago was relevant. While it is generally true that impeachment on a collateral matter is impermissible (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §607.2 (4th ed. 1984)), the telephone records were relevant to impeach defendant on a material issue. The trip to Chicago had allegedly been precipitated by Lear's telephone calls to his sister in Chicago on September 2, 1988. The telephone records showed that defendant's trip to Chicago was not brought about by Lear's telephone call to Chicago from defendant's home on September 2, 1988, as defendant claimed. We now move to a discussion of defendant's second contention.

During the cross-examination of defendant, the State asked him whether the day before the crime was his day off from his place of employment, the Adam's Mark Hotel. Defendant replied affirmatively and explained that he was temporarily laid off. The State then asked defendant if he had been fired. Defendant objected, and the court sus-

tained the objection. The trial court allowed the State to present rebuttal evidence through Renee Difore, the keeper of records at the Adam's Mark Hotel. She testified that defendant had been terminated on August 22, 1988. Defendant contends that this constituted impermissible impeachment on a collateral matter. He also argues that it was improper to allow this rebuttal evidence as it had been excluded on cross-examination as beyond the scope of direct, citing *People v. Cage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805.

■ Allowance of rebuttal testimony is a matter left to the sound discretion of the trial court. (*People v. Collins* (1985), 106 Ill. 2d 237, 269, 478 N.E.2d 267, 281.) This court will not interfere unless there has been clear abuse resulting in manifest injustice to defendant. Moreover, *Cage*, cited by defendant, is distinguishable from the instant case. In *Cage*, the error made by the State was the introduction of other crimes, thus prejudicing the trier of facts. In the instant case, the State sought to introduce evidence to establish motive for the offense. Defendant's termination from his place of employment was arguably an impetus for his decision to participate in this armed robbery. Additionally, Ms. Difore's testimony damaged the credibility of defendant's testimony. The court was within its discretion to disallow evidence as beyond the scope of direct but to allow it at a later stage during the trial.

The second issue we are asked to consider is whether the trial court erred in refusing defense counsel's tendered instructions which stated that defendant could not be held accountable merely by his presence at the crime scene. Defendant contends that because the State's entire theory of the case was one of accountability, a complete statement of the law of accountability was necessary, but without giving at least one of defendant's three tendered instructions, an essential element was missing. We disagree.

■ Defendant is entitled to the submission of appropriate jury instructions on the law applicable to the theory of defense if there was evidence introduced at trial in support of that theory. (*People v. Thomas* (1988), 175 Ill. App. 3d 521, 528, 529 N.E.2d 1071, 1075.) Supreme Court Rule 451(a) states that IPI Criminal instructions (Illinois Pattern Jury Instructions, Criminal (2d ed. 1981 & Supp. 1984, 1989)) shall be used when applicable, unless the court determines that it does not accurately state the law. (134 Ill. 2d R. 451(a).) Defendant cites several cases for the proposition that mere presence is not enough to convict on the theory of accountability. (*People v. Williams* (1986), 140 Ill. App. 3d 784, 489 N.E.2d 28; *In re Woods* (1974), 20 Ill. App. 3d 641, 314 N.E.2d 606; *People v. Ramirez* (1968), 93 Ill. App. 2d

404.) However, these cases do not hold that this necessitates the use of non-IPI instructions. As the *Thomas* court stated:

> "The courts reasoned, generally, that the essence of the 'mere presence' instruction was already incorporated in or encompassed by those instructions—which advise the jury that a defendant must be found innocent unless the State has proved beyond a reasonable doubt that before or during the commission of the defined offense he/she, with the intent to promote or facilitate the commission of that offense, knowingly solicited, aided, abetted, agreed or attempted to aid the other person in the planning or commission of it—and that the juries were, therefore, fully and accurately apprised of the law constituting the theory of defense, *i.e.*, that mere presence at the scene of a crime or during its commission is insufficient to sustain a conviction." (175 Ill. App. 3d at 529, 529 N.E.2d at 1076.)

We find the reasoning of the *Thomas* court persuasive and conclude that there was no error in adopting the IPI instructions regarding defendant's theory of accountability.

Defendant next contends his conviction must be reversed because the jury was not instructed as to the mental state required for the offense of armed robbery.

The United States Supreme Court has condemned the use of jury instructions that imply the existence of a mental state. (*Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450.) However, *Sandstrom* addressed the specific intent crime of murder. Illinois courts have consistently held that armed robbery is a general intent crime. (*People v. Ortiz* (1987), 156 Ill. App. 3d 170, 177, 509 N.E.2d 633, 638; *People v. Gerrior* (1987), 155 Ill. App. 3d 949, 955, 508 N.E.2d 1119, 1123; *People v. Lamprey* (1979), 79 Ill. App. 3d 1065, 1068, 398 N.E.2d 1076, 1078.) As the court stated in *People v. Talley* (1988), 177 Ill. App. 3d 170, 531 N.E.2d 1139:

> "Robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—1) does not specify a necessary mental state, and the condition making robbery armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2) does not provide a necessary mental state." (177 Ill. App. 3d at 173, 531 N.E.2d at 1141.)

The court went on to state that robbery has been held to be a general intent crime. As the court held in *People v. Avant* (1989), 178 Ill. App. 3d 139, 146, 532 N.E.2d 1141, 1145, the State need prove only general intent to establish the *mens rea* of robbery.

■ Defendant relies on *People v. Grant* (1981), 101 Ill. App. 3d 43, 427 N.E.2d 810, to urge that his conviction be reversed for failure

of the jury instructions to incorporate a mental state. We find *Grant* distinguishable from the instant case. It is certainly correct that section 4—3(a) of the Code provides that a person is not guilty of an offense, other than absolute liability, unless the person acts with one of the mental states described in sections 4—4 through 4—7. (Ill. Rev. Stat. 1987, ch. 38, pars. 4—3(a), 4—4 through 4—7.) However, section 4—3(b) states that when the statute does not prescribe a particular mental state, any mental state described in sections 4—4 through 4—7 is applicable. When the mental state is not specified, either intent, knowledge, or recklessness will be implied. *Grant* involved the specific intent crimes of assault and criminal trespass to land. (*Grant*, 101 Ill. App. 3d 43, 427 N.E.2d 810.) The defendants in *Grant* challenged their convictions on the grounds that the jury instructions regarding assault and criminal trespass to land did not expressly include one of the mental states as set forth in section 4—3(a) of the Code. The *Grant* court held that the instructions lacked an essential element of the crime charged, namely, mental state, and reversed the convictions.

In contrast to *Grant*, robbery is a general intent crime. As such, it is not necessary for the mental state to be expressly stated in the statute. Intent, knowledge, or recklessness will be implied to satisfy the *mens rea* requirement of the crime. (*Talley*, 177 Ill. App. 3d at 173, 531 N.E.2d at 1141.) The due process claim of defendant is therefore without merit.

Defendant's fourth issue on appeal is whether the court abused its discretion in sentencing defendant to the maximum term for murder.

It is correct, as defendant contends, that the sentencing court has both a constitutional and statutory mandate to consider the goal of rehabilitation. (Ill. Const. 1970, art. I, §11; Ill. Rev. Stat. 1985, ch. 38, par. 1001—1—2(a).) This same statutory provision also requires the seriousness of the offense to be taken into account. (*People v. Parker* (1989), 192 Ill. App. 3d 779, 789, 549 N.E.2d 626, 632.) The record must show that both were taken into consideration. (*People v. Morando* (1988), 169 Ill. App. 3d 716, 726, 523 N.E.2d 1061, 1069.) The prime responsibility for determining the proper balance to be struck between these two competing considerations rests with the trial court. *People v. Crosser* (1983), 117 Ill. App. 3d 24, 31, 452 N.E.2d 857, 864.

In the case at bar, the record shows that the trial court took into consideration the presentencing report and defendant's statement. With this evidence before it, the court is presumed to have considered the factors in mitigation and aggravation. (*People v. Powell* (1987), 159 Ill. App. 3d 1005, 1011, 512 N.E.2d 1364, 1368.) Defend-

ant states several mitigating factors in his behalf. In particular, he cites his steady employment history and remorse for the offense. The court noted these factors in mitigation, but nevertheless imposed the maximum term on defendant, citing several aggravating factors in support of the sentence. In particular, the record showed that defendant had a criminal record and demonstrated a lack of remorse by drinking beer after the shooting. Lastly, the trial court was concerned that this sentence act as a deterrent to protect service stations along the interstate. After a review of the sentencing hearing, we find that there was no abuse of discretion.

The next issue is whether the court erred in entering judgment both on felony murder and the underlying felony of armed robbery. Defendant argues that he cannot be convicted of two offenses based on the same transaction where one offense is by definition a lesser-included offense. He contends that armed robbery is such a lesser-included offense.

The statute governing lesser-included offenses states:

" 'Included offense' means an offense which

(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or

(b) Consists of an attempt to commit the offense charged or an offense included therein." Ill. Rev. Stat. 1977, ch. 38, par. 2—9.

Our supreme court has ruled that armed robbery is not a lesser-included offense of felony murder. (*People v. Green* (1975), 62 Ill. 2d 146, 340 N.E.2d 9; *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819.) The court acknowledged that the activities constituting the offenses were closely related acts. However, the *Williams* court stated that the crimes are clearly distinct and require different elements of proof.

While the court in *Green* ruled on an "independent motivation" test subsequently rejected by the supreme court in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, we believe that armed robbery is not a lesser-included offense of felony murder. We agree with the reasoning of the Appellate Court, Third District, in *People v. Gulliford* (1980), 86 Ill. App. 3d 237, 407 N.E.2d 1094. In *Gulliford*, the court stated that even where certain felonies are closely related the felony may not be a lesser-included offense of the principal. The court cited such examples as deviate sexual assault and aggravated kidnapping. A similar result should occur in this case. While these of-

fenses may be closely related, they are distinct enough to treat separately.

Defendant relies on *People v. Devine* (1981), 98 Ill. App. 3d 914, 424 N.E.2d 823, in which our colleagues in the Appellate Court, Third District, held that armed robbery is a lesser-included offense of felony murder. The *Devine* court found that the felony is established by proof of the same or less than all of the facts required to establish murder. While we acknowledge that they are closely related incidents, we note that we are not bound by the *Devine* decision, and we decline to adopt its holding. Instead, we agree with our colleagues on the Appellate Court, First District, and their decision in *People v. Plummer* (1986), 151 Ill. App. 3d 94, 502 N.E.2d 1120.

In *Plummer*, the defendant also relied on *Devine* and asserted that his felony murder and armed robbery convictions could not stand together because armed robbery is a lesser-included offense. The *Plummer* court pointed out that the defendant's reliance on *Devine* was misplaced because the issue had been decided differently by our supreme court in *People v. Green* (1975), 62 Ill. 2d 146, 340 N.E.2d 9, and the *Devine* court had neither mentioned nor distinguished *Green*. (151 Ill. App. 3d at 98, 502 N.E.2d at 1124.) Like the *Plummer* court, we are compelled to follow the Illinois Supreme Court decision in *Green*.

The last issue defendant raises is whether the court improperly imposed an extended sentence for armed robbery.

The court sentenced defendant to terms of imprisonment of 60 years for murder, 30 years for attempted murder, and 60 years for armed robbery. The 60-year term for armed robbery is an extended-term sentence. The supreme court in *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569, ruled that an extended-term sentence may only be imposed on the most serious offense. The State has conceded this point. Accordingly, we exercise our authority under Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)) and modify defendant's sentence on the armed robbery conviction to 30 years' imprisonment since it was clearly the trial court's intent to sentence defendant to the maximum term of imprisonment for armed robbery.

For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed as modified.

Affirmed as modified.

RARICK, P.J., and WELCH, J., concur.