THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FRANCIS WOLTZ, Defendant-Appellant.

Fifth District  No. 5—90—0590

Opinion filed May 7, 1992.—Rehearing denied June 16, 1992.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kathryn Dobrinic, State's Attorney, of Hillsboro (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Francis Woltz, was charged in Montgomery County with one count of aggravated criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1).) Defendant was found guilty by a jury and sentenced to 30 years' imprisonment in the Department of Corrections. On appeal, defendant contends: (1) he was denied a fair trial by the admission of evidence of another crime; and (2) the trial court considered an improper factor in aggravation at sentencing. We agree with defendant's first contention and therefore reverse and remand for a new trial.

The information alleged that on September 11, 1989, defendant committed an act of sexual penetration with V.J., who was under 13 years of age, by placing his finger in the vagina of V.J. Prior to trial, defendant moved *in limine* to prohibit the State from introducing evidence of a separate sexual assault allegedly committed by defendant on another young girl, J.S. After a hearing, the trial court denied defendant's motion, finding that there was sufficient similarity between the two offenses to allow the introduction of the evidence for the limited purposes of showing absence of mistake and "design or plan." The court gave a limiting instruction to the jury concerning the other crime's evidence before J.S.'s testimony and also at the time the jury was instructed before deliberations began.

At trial, V.J. testified that she was 12 years of age. V.J. stated that on September 11, 1989, she had gone horseback riding with her father, L.J., and her brother, J.J. V.J. and her father rode horses while J.J. rode a bicycle. During the ride they stopped at the home of defendant, who was a friend of V.J.'s father, and stayed one to two hours. When V.J.'s family decided to go home, defendant's son Lee Robinson requested to ride one of the horses. The group left about dusk, with L.J. and Lee Robinson riding horses, and V.J., J.J., defendant, and his two other children riding in defendant's car. As they proceeded to V.J.'s home, her father's horse ran through a fence and he was injured. It was then decided that defendant and V.J. would walk the horses home, while the remaining people accompanied defendant's son William Woltz in driving L.J. to the hospital.

V.J. testified that she and defendant had been walking about 45 minutes when he began walking his horse closer and closer to her and then "grabbed" her. Defendant put his left hand down her pants and between her legs and stuck his fingers "inside" her. V.J. tried to get away and then one of the horses stepped on her foot. After she got her foot loose, she and defendant somehow fell to the ground. V.J.

testified that defendant then took his hand out of her pants and put it into her shirt, touching her breast. They got up, and V.J. tried to get on one of the horses, but defendant pulled her down. V.J. was screaming during the incident and defendant told her that if she did not stop, he would take her into a cornfield and "fuck" her. V.J. stopped screaming and defendant unzipped his pants and told her to feel his penis. V.J. again tried to get away, but defendant was still holding her and his right hand was in her pants. She managed to pull his hand out and when she realized she was free from him, she ran to her grandmother's house. When no one was there, she looked outside to see if defendant was around, and then ran next door to her own home and hid in the closet.

V.J. testified that she did not tell her parents about the incident until "after a while." She wrote a note to them and left it on a table before going to school. When she returned home from school, her father talked with her about the note and she then wrote a second note concerning the incident. V.J. identified People's exhibits 1 and 2 as the notes she had written. On cross-examination, V.J. denied telling anyone on the school bus that Frank Stivers had sexually assaulted her.

L.J. testified that in September 1989, his daughter V.J. was 11 years old. L.J.'s testimony regarding the events of September 11, 1989, was substantially similar to V.J.'s up to the time he was taken to the hospital. Approximately two weeks later, V.J. left a note addressed to "Mom and Dad" before she got on the school bus. L.J. stated that when V.J. got home from school that day, he talked to her about the note and, when she was too embarrassed to discuss the matter with him, asked her to write a second note. L.J. turned the notes over to the county investigator and in court identified People's exhibits 1 and 2 as the notes V.J. had written.

George Wise, the chief investigator for the Montgomery County sheriff's department, testified that on October 31, 1989, he spoke with defendant about the events of September 11. Defendant denied that he had intentionally done anything of a sexual nature to V.J. Defendant told Wise that V.J. had been crying due to her distress at seeing her father injured and that in putting his arm around her to console her, his hand may have accidentally touched her breast. Wise testified that defendant had given his age as 34.

J.S. testified that in July 1989, she was 14 years old and lived near defendant in Coalton, Illinois. During July 1989, she was at defendant's home when, as she was going outside, defendant came up behind her and "grabbed" her. J.S. stated that defendant dragged her

through the kitchen and into his son's room where he threw her onto the floor and "raped" her. Although no questions regarding her condition were asked, the record reflects that at the time of defendant's trial in March 1990, J.S. was "noticeably pregnant."

Elbert Lee Robinson testified that he was 14 years old and that defendant was his father. Robinson testified that in July 1989, his friend J.S. came to the home he shared with his mother, father and sister and that when he left the house J.S. was in the front room.

Defendant testified that on September 11, 1989, L.J., V.J., and J.J. came to his house on horses and a bicycle about 6:30 p.m. L.J. left to go into town for food and cigarettes and the children remained at defendant's house. L.J. returned several hours later, and after drinking several beers with defendant, he asked if defendant would help him take the children home. Defendant's son and L.J. rode the horses, and defendant took V.J. and J.J. in the car along with his daughter and stepson. During the ride, L.J.'s horse bolted, went through a wire gate and then rolled over on L.J. V.J. began to cry and scream "get up" to her father. Defendant put his arm around V.J. to comfort her and told her that everything was going to be all right. Defendant's stepson drove L.J. to obtain a ride to the hospital from a licensed driver.

Defendant and V.J. walked the horses back to L.J.'s house, the trip taking about 45 minutes. Defendant testified that it had been "misting rain" during the walk, and that V.J. was shaking, cold and wet, so that when they approached the house, V.J. said she was tired and started running. Defendant denied ever putting his hand inside V.J.'s pants, his finger in her vagina, or touching her breast.

Christopher Eller testified that in September 1989, he was riding the school bus with V.J. and heard her tell Michelle Eller that Frank Stivers had molested her.

Defendant argues that the trial court erred in permitting testimony concerning defendant's sexual intercourse with J.S. because this other crime's evidence had no probative value and was highly prejudicial. The State responds that the testimony of J.S. was properly admitted to show "absence of mistake, common design or plan and *modus operandi*," but, that if any error occurred, it was harmless.

Generally, evidence of other crimes is inadmissible if relevant merely to establish the defendant's propensity to commit crime. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, 823, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145; *People v. Brown* (1991), 214 Ill. App. 3d 836, 844, 574 N.E.2d 190, 195.) Evidence of the commission of other crimes is admissible, however, when

such evidence is relevant to prove any purpose other than propensity to commit crime, such as intent, motive, identity, absence of mistake, knowledge, common design, scheme, or plan, or *modus operandi*. (*Brown*, 214 Ill. App. 3d at 844, 574 N.E.2d at 195; *People v. Daniels* (1988), 172 Ill. App. 3d 616, 624, 527 N.E.2d 59, 64.) It is within the sound discretion of the trial court to determine whether evidence of other crimes is relevant to a material issue and whether the probative value of such evidence outweighs its prejudicial impact; this determination will be overturned only if there exists a clear abuse of discretion. *Brown*, 214 Ill. App. 3d at 844-45, 574 N.E.2d at 195.

■ In the case at bar, the trial court allowed introduction of J.S.'s testimony for the purposes of showing absence of mistake and common design or plan. The State argued that the admission of J.S.'s testimony was necessary to show absence of mistake because defendant had told investigator Wise that if he had touched V.J.'s breast, he had done so accidentally. However, the conduct upon which the aggravated criminal sexual assault charge was based, defendant's placing his finger in the vagina of V.J., was never claimed to be "accidental" but was totally denied by defendant. Thus, there was no valid reason to admit J.S.'s testimony as proof of absence of mistake. (See *People v. Torres* (1981), 93 Ill. App. 3d 718, 722-23, 417 N.E.2d 728, 731-32 (reversible error to admit testimony of two boys other than complaining witness that defendant had taken indecent liberties with them where "defense" it purported to rebut was introduced by prosecution's own witness and defendant did not testify to any innocent construction of his acts).) Further, admitting into evidence separate acts of sexual misconduct with other children at other times and places for the purposes of showing intent, guilty knowledge, accident, or mistake has been rejected as unnecessary because these factors are shown by testimony concerning the act itself. *Daniels*, 172 Ill. App. 3d at 624, 527 N.E.2d at 64; see also *People v. McMillan* (1980), 86 Ill. App. 3d 208, 211, 407 N.E.2d 207, 210 (evidence of acts with 15-year-old daughter inadmissible to show defendant's intent regarding crime charged against 13-year-old daughter).

The second stated purpose for which the trial court admitted J.S.'s testimony was common design. Common design refers to a larger criminal plan of which the crime charged is only a part. (*People v. Barbour* (1982), 106 Ill. App. 3d 993, 999, 436 N.E.2d 667, 672; *People v. Bayer* (1987), 160 Ill. App. 3d 218, 221, 513 N.E.2d 457, 459.) Defendant argues, and we agree, that the testimony of J.S. was not properly admitted as evidence of a common design or scheme. There is no evidence to suggest that either offense was part of a

larger criminal scheme. Rather, it appears that the court meant that the evidence in question was admissible to prove *modus operandi*. See *Barbour*, 106 Ill. App. 3d at 999, 436 N.E.2d at 672 (although often used interchangeably, the concepts "common design" and *"modus operandi"* are quite distinguishable).

■ *Modus operandi* refers to a method of operation or pattern of criminal behavior so distinctive that separate crimes or wrongful conduct is recognized as the work of the same person. (*Bayer*, 160 Ill. App. 3d at 221, 513 N.E.2d at 459.) In order for evidence to be admissible against a defendant under a theory of *modus operandi*, there must be a clear connection which creates a logical inference that, if defendant committed the former offense, he also committed the latter offense. (*People v. Hall* (1989), 186 Ill. App. 3d 123, 127, 541 N.E.2d 1369, 1372.) This inference arises when both crimes share peculiar and distinctive features not shared by most offenses of the same type and which, therefore, earmark the offenses as one person's handiwork. *Hall*, 186 Ill. App. 3d at 127, 541 N.E.2d at 1372; see also *People v. Phillips* (1984), 128 Ill. App. 3d 457, 460, 470 N.E.2d 1137, 1140.

In *Phillips*, the trial court granted defendant's motion *in limine* preventing the State from introducing evidence of a kidnap attempt on a woman in Williamson County during his trial for the kidnapping and sexual assault of a woman in Jackson County. This court upheld the trial court's decision, finding that the State had not shown factors so unique as to establish *modus operandi*. *Phillips*, 128 Ill. App. 3d at 460, 470 N.E.2d at 1139-40.

In *Barbour*, the defendant was convicted of rape and deviate sexual assault following a trial at which the State introduced evidence of two earlier rapes to show "common design or *modus operandi*." In remanding the cause for a new trial, the appellate court found no reason to believe the rapes were evidence of a common scheme and that the State had failed to demonstrate *modus operandi* despite its citation of numerous similarities among the crimes. *Barbour*, 106 Ill. App. 3d at 1000, 436 N.E.2d at 672.

In arguing that the offenses involved herein share a *modus operandi*, the State lists several similarities among the crimes. However, some of the purported similarities are common to many offenses of this type (*e.g.*, both victims were young girls and were acquainted with defendant prior to the attack) and others are merely descriptive of the crime of aggravated criminal sexual assault (*e.g.*, some force was used in both attacks and both victims had their sexual organs penetrated by a part of defendant's body).

While a showing of *modus operandi* does not require that the similarities be unique to the offenses being compared (*Barbour*, 106 Ill. App. 3d at 1000, 436 N.E.2d at 672), we agree with defendant that here, as in *Phillips* and *Barbour*, there was no showing of a distinctive pattern of criminal behavior which would earmark the alleged offenses as the work of defendant. In the incident described by J.S., defendant grabbed her, dragged her through his home and into his son's room where he threw her to the floor and "raped" her, whereas V.J. testified that while walking along a public road with defendant, he grabbed her, put his hand down her pants and his fingers inside her, and after they had fallen down, he fondled her breast and later requested that she touch his penis. Neither the acts nor the circumstances under which they took place show sufficient similarities so as to establish *modus operandi*. Therefore, where there was no proper purpose for the other crime's evidence, its admission was an abuse of the trial court's discretion.

The State argues that where the testimony of V.J. included all the elements of the offense of aggravated criminal sexual assault, any error in allowing the testimony of another crime to be admitted was harmless. However, when the outcome of a trial depends entirely on the credibility of the complainant and the defendant, as here, no error should be permitted to intervene. (*People v. Lawler* (1991), 142 Ill. 2d 548, 561-62, 568 N.E.2d 895, 901.) Erroneous admission of evidence of other crimes carries a high risk of prejudice and, ordinarily, calls for reversal. (*People v. Mason* (1991), 219 Ill. App. 3d 76, 80, 578 N.E.2d 1351, 1354.) Therefore, here, we cannot say that the improper admission of J.S.'s testimony was harmless.

Having determined that defendant is entitled to a new trial, we decline comment on the remaining issue raised on appeal. For the foregoing reasons, defendant's conviction is reversed and the cause is remanded to the circuit court for a new trial.

Reversed and remanded.

RARICK and WELCH, JJ., concur.